DAVISON et al., Appellants,

v.

RINI, Appellee.

[Cite as *Davison v. Rini* (1996), 115 Ohio App.3d. 688.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 96 CA 2415.

Decided Nov. 18, 1996.

*Leeseberg, Maloon, Schulman & Valentine* and *Gerald S. Leeseberg*, for appellants.

*Law Offices of Stanley C. Bender, Stanley C. Bender* and *Rebecca Widdig Amlung*, for appellee.

PETER B. ABELE, Presiding Judge.

This is an appeal from a summary judgment entered by the Scioto County Common Pleas Court in favor of Jerome Rini, M.D., defendant below and appellee herein, and against Norma Davison and her husband Robert Davison, plaintiffs below and appellants herein.

Appellants assigns the following errors:

FIRST ASSIGNMENT OF ERROR:

"The trial court erred in granting defendants-appellants' motion for summary judgment, when defendants-appellees admitted in their summary judgment reply

memorandum that there were genuine issues of material fact as to whether appellant had suffered compensable injuries as a result of appellee's failure to timely diagnose her breast cancer. (Defendant's reply memorandum: February 15, 1995.)"

SECOND ASSIGNMENT OF ERROR:

"The trial court erred holding that shortened life expectancy is not a cognizable injury under Ohio law. (Judgment entry of February 16, 1996.)"

On August 21, 1991, appellants filed the instant medical malpractice action against appellee and another doctor whom appellants later dismissed from the action. In the complaint, appellants alleged that appellee failed to properly and timely diagnose appellant Norma Davison's breast cancer. Appellants further alleged that as a direct and proximate cause of that failure, appellant Norma Davison (1) "suffered severe injuries and experienced much pain, suffering and mental anguish and will experience such in the future"; (2) "incurred reasonable medical, hospital and related expenses, and will incur such in the future"; and (3) "lost wages and her ability to earn income has been impaired." Last, appellants alleged that appellant Robert Davison has "suffered from severe emotional distress, pain and suffering and mental anguish, as well as pecuniary and non-pecuniary loss, including loss of support, services, society, companionship and * * * [he] expect[s] to suffer such in the future."

On December 7, 1994, appellee filed a motion for summary judgment that provided in full as follows:

"Defendant, Jerome Rini, M.D., moves the Court for an order, pursuant to Rule 56, Ohio Rules of Civil Procedure, granting him judgment on the ground that reasonable minds could only conclude that he is entitled to judgment as a matter of law. This motion is based upon the depositions of plaintiff, and Barry Singer, M.D., which have been filed with the clerk of courts."

In a memorandum attached to the motion, appellee assumed for purposes of the motion that he was negligent in failing to timely diagnose appellant Norma Davison's breast cancer and that Dr. Barry Singer's deposition testimony was accurate. In his deposition, Dr. Singer testified that appellant Norma Davison would have had an eighty-five percent chance of survival for five years if the tumor had been diagnosed in August 1989, she would have had a sixty percent chance of survival for five years if the tumor had been diagnosed in January 1990, and she has a twenty percent chance of survival for five years due to the fact the tumor was discovered in July 1990. After noting that appellant Norma Davison had a radical mastectomy on July 31, 1990, appellee argued that because appellant Norma Davison testified at her September 14, 1994 deposition that her

cancer has not recurred, she has no compensable injury. In the concluding paragraph of the memorandum, appellee wrote in pertinent part as follows:

"Mrs. Davison's claim that Dr. Rini's alleged negligence caused her to suffer a reduction in her chance of surviving cancer is deficient as a matter of law. The Supreme Court of Ohio has unequivocally stated that a loss of chance of recovery alone is not an 'injury' for purposes of a malpractice action. Summary judgment must be granted in favor of Dr. Rini."

On January 19, 1995, appellants filed a memorandum in response to appellee's motion for summary judgment. In the memorandum, appellants wrote in pertinent part as follows:

"Defendant posits the issue before this Court as follows:

" 'Plaintiff is alleging that the "injury" caused by Dr. Rini's alleged malpractice is the *decrease in her chances of "surviving" or living cancer free, for some specified period of time.*' Defendant's *Memorandum,* p. 5 [Emphasis supplied.]

"This is an incorrect statement of the nature of the claim of Plaintiffs in this case."

Appellants argued that the essence of their claim is that Dr. Rini should have ordered a baseline mammogram in August 1989 and should have ordered a diagnostic mammogram in January 1990. According to appellants, those mammograms probably would have revealed appellant Norma Davison's breast cancer. As a result of Dr. Rini's failure to order the mammograms, the breast cancer was not detected until July 1990. Consequently, appellant Norma Davison will more likely than not suffer a recurrence of her cancer, experience more pain and suffering, and require extensive future medical care for the treatment of cancer. Additionally, due to Dr. Rini's failure to timely diagnose the breast cancer, appellant Norma Davison has had to endure a radical mastectomy, pain, suffering, disfigurement, mental anguish, and increased medical expenses. Appellant Robert Davison has endured emotional distress, loss of consortium, and other damages flowing from Dr. Rini's failure to timely diagnose appellant Norma Davison's breast cancer.

On February 15, 1995, appellee filed a reply memorandum in support of his motion for summary judgment. In the memorandum, appellee wrote in pertinent part as follows:

"Plaintiff on page four of her Memorandum Contra *does present an argument concerning a potential damage which is not addressed, nor was it intended to be addressed, by defendant's Motion For Summary Judgment.* Here plaintiff argues, essentially for the first time, that an earlier diagnosis may have prevented radical mastectomy as a surgical treatment. Plaintiff appears to be arguing that an earlier diagnosis may have presented a lumpectomy as a surgical

alternative to radical mastectomy. * * * *Defendant does not dispute that the litigation may proceed forward, at least at this time, on that relatively narrow item of damage.*" (Emphasis added.)

Appellee cited *Flaugher v. Mercy Hosp. Corp.* (Aug. 13, 1993), Scioto App. No. 92 CA 2056, unreported, 1993 WL 307494, and then commented that both *Flaugher* and the case *sub judice* involve "a claim for alternative medical treatment with associated pain and suffering that should survive the motions for summary judgment."

On February 16, 1996, the trial court granted appellee's motion for summary judgment. The trial court wrote in full as follows:

"This cause comes to the Court upon motion of the defendants for summary judgment filed on December 7, 1994.

"The Court having considered the motion, memoranda filed by both parties and all matters permitted pursuant to Civ.R. 56 finds that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment was made. That conclusion is that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Therefore, the Court ORDERS that summary judgment be entered for the defendants and that costs be assessed in their favor."

Appellants filed a notice of appeal from that judgment.

## I

Initially, we must address a threshold jurisdictional issue concerning whether the summary judgment disposed of all of the claims raised by appellants. If the judgment entered below does not constitute a final appealable order, then we, as an appellate court, do not have jurisdiction over this appeal. Ohio law provides that appellate courts have jurisdiction to review the final orders or judgments of inferior courts in their district. See, generally, Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2505.02. A final order or judgment is one which affects a substantial right and, in effect, determines the action. R.C. 2505.02. If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and it must be dismissed. In the event that this jurisdictional issue is not raised by the parties involved with the appeal, then we must raise it *sua sponte*. See *Whitaker–Merrell v. Geupel Co.* (1972), 29 Ohio St.2d 184, 186, 58 O.O.2d 399, 400, 280 N.E.2d 922, 924.

Civ.R. 54(B) provides in part:

"When more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon express determination that there is no just reason for delay. In the absence of such determination that there is no just reason for delay, any order * * * which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order * * * is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

An order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable. *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 540 N.E.2d 1381. Civ.R. 54(B) is designed to be used only in those situations where there are multiple claims or parties, and there is an otherwise final adjudication of less than all of the claims or rights of the parties. *Fireman's Fund Ins. Co. v. BPS Co.* (1982), 4 Ohio App.3d 3, 4 OBR 23, 446 N.E.2d 181. The general purpose of Civ.R. 54(B) is to strike a reasonable balance between the policy against piecemeal appeals and the possible injustice sometimes created by the delay of appeals. *Alexander v. Buckeye Pipe Line Co.* (1977), 49 Ohio St.2d 158, 3 O.O.3d 174, 359 N.E.2d 702; *T.R. Barth & Assoc. v. Marginal Ent. Inc.* (1976), 48 Ohio App.2d 218, 2 O.O.3d 182, 356 N.E.2d 766; *Mayfred Co. v. Bedford Hts.* (1980), 70 Ohio App.2d 1, 24 O.O.3d 5, 433 N.E.2d 620; and *Cammack v. V.N. Holderman & Sons* (1973), 37 Ohio App.2d 79, 66 O.O.2d 135, 307 N.E.2d 38.

In the case *sub judice,* we must determine if the trial court's summary judgment disposed of all of the claims raised by appellants. We note that in his motion for summary judgment appellee requested summary judgment; appellee did not request a partial summary judgment. In his reply memorandum, however, appellee conceded that he did not move for summary judgment on all of appellants' claims. Appellee wrote that he "does not dispute that the litigation may proceed forward" on the issue of whether or not an earlier diagnosis might have allowed appellant Norma Davison to have a lumpectomy rather than a radical mastectomy. Appellee also noted that appellant Norma Davison's claim for pain and suffering "should survive the motion for summary judgment." Nevertheless, despite the fact that in his reply memorandum appellee clearly indicated that he intended the motion for summary judgment to be a motion for partial summary judgment, the motion itself requested a full summary judgment and the trial court granted the entire motion. Hence, we find that the trial court's February 16, 1996 judgment entry disposed of all the claims of all of the

parties. The February 16, 1996 judgment entry thus constitutes a final appealable order.

We will now proceed to discuss appellants' assignments of error.

## II

In their first assignment of error, appellants assert that the trial court erred by granting appellee's motion for summary judgment. Appellants argue that because appellee, in his reply memorandum, admitted that some issues should survive the motion for summary judgment, the trial court erred by granting summary judgment dismissing the entire action. In this regard, appellants note that appellee's motion for summary judgment did not address appellants' claims for injuries resulting from the radical mastectomy, for pain and suffering, for medical expenses, for lost wages, and for emotional distress.

We note that summary judgment is appropriate when the movant demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1126; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party bears the burden of proving that no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An appellate court need not defer to the trial court's decision in summary judgment cases. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

We agree with appellants that the trial court erred by dismissing the entire action on summary judgment. Appellee conceded in his February 15, 1995 reply memorandum that appellants' claims on the issue of whether an earlier diagnosis might have allowed appellant Norma Davison to have a lumpectomy rather than a radical mastectomy, and appellants' claims for damages flowing from the radical mastectomy, including pain and suffering, medical expenses, lost wages, and emotional distress, should survive the motion for summary judgment. In view of appellee's concession, we find that the trial court erred by dismissing these claims. Additionally, we find that the trial court erred by dismissing appellant Robert Davison's claims from the action. Appellee's reply memorandum clearly

stated that appellee sought summary judgment on only one issue—whether appellant Norma Davison can recover for the shortening of her life expectancy.

Accordingly, based upon the foregoing reasons, we sustain appellants' first assignment of error.

### III

In their second assignment of error, appellants assert that the trial court erred by holding that a shortened life expectancy is not a cognizable injury under Ohio law. We note, however, that the trial court's judgment did not explicitly discuss the shortened life expectancy claim. The trial court granted appellants' motion for summary judgment without giving specific reasons. Nevertheless, because under appellants' first assignment of error we held that the trial court erred by granting summary judgment on all the claims *except* the shortening of life expectancy claim, we will review the issue of whether a shortened life expectancy is a cognizable injury under Ohio law.

Appellants cite *Shapiro v. Burkons* (1978), 62 Ohio App.2d 73, 16 O.O.3d 175, 404 N.E.2d 778, and *Tomcik v. Ohio Dept. of Rehab. & Corr.* (Ct. of Cl.1991), 62 Ohio Misc.2d 324, 598 N.E.2d 900, for the proposition that a shortened life expectancy is a cognizable injury. In *Tomcik,* the Court of Claims, when awarding damages, considered the fact that the plaintiff's life expectancy had been reduced by approximately fifteen percent. In *Shapiro,* the Eighth District recognized a cause of action for reduced life expectancy as follows:

"Therefore, the primary issue to be determined by this court in the case at bar is whether after construing the evidence most strongly in favor of the appellants, an inference may reasonably arise that the alleged negligence by appellee was, in probability, the direct and proximate cause of appellant's reduced life span. Stated differently, the issue is whether appellant adduced sufficient probative evidence from which it may be inferred that her medical prognosis probably would have been better were it not for the alleged negligence of the appellee."

We note that the plaintiff in *Shapiro* lost the case not due to the lack of a recognizable cause of action, but because she was unable to present expert witness testimony to prove within a reasonable certainty that if a biopsy had been performed earlier it would have revealed cancer.

Appellants note that although appellee cites *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97, for the proposition that a shortened life expectancy is not a recognizable cause of action, *Cooper* did not make that pronouncement. According to appellants, *Cooper* involves the question of what evidence is necessary to prove proximate cause. In the syllabus, the court held as follows:

"In an action for wrongful death, where medical malpractice is alleged as the proximate cause of death, and plaintiff's evidence indicates that a failure to diagnose the injury prevented the patient from an opportunity to be operated on, which failure eliminated any chance of the patient's survival, *the issue of proximate cause can be submitted to a jury only if* there is sufficient evidence showing that with proper diagnosis, treatment, and surgery, the patient probably would have survived." (Emphasis added.)

In the *Cooper* opinion, the court emphasized that the element of proximate cause must be proven by evidence that a result was more likely than not to have been caused by an act. *Id.,* 27 Ohio St.2d at 253–254, 56 O.O.2d at 152–153, 272 N.E.2d at 104.

Appellants contend that they have presented sufficient evidence to demonstrate that appellee's negligence was the proximate cause of appellant Norma Davison's shortened life expectancy. Appellants note that in an affidavit attached to their memorandum contra appellee's motion for summary judgment, Dr. Singer stated as follows:

"1. As set forth in my deposition in this case, it is my opinion that the Defendant Dr. Rini fell below the standard of care in not having the Plaintiff Norma Davison undergo mammography in August of 1989 and January 1990.

"2. It is my further opinion that, had mammography been done at either of those times, the Plaintiff's breast cancer would have been diagnosed.

"3. It is further my opinion that had the Plaintiff been treated for her breast cancer at either of those times, she would have had a greater than fifty percent (50%) probability of surviving her breast cancer. Furthermore, her treatment as of those times would not have required radical surgery, and she could have been treated by surgical lumpectomy.

"4. When the Plaintiff's breast cancer was eventually diagnosed in July of 1990, in my opinion she had a less than fifty percent (50%) of being successfully treated and surviving her breast cancer. It is my opinion that, more likely than not, Norma Davison will eventually suffer a recurrence of her breast cancer in the future which will eventually cause her death."

Additionally, appellants note that Dr. Singer, in his deposition, testified that (1) appellant Norma Davison would have had an eighty-five percent chance of surviving for five years if the cancer had been detected in August 1989; (2) she would have had a sixty percent chance of surviving for five years if the cancer had been detected in January 1990; and (3) due to the delay in diagnosis, she has only a twenty-five percent chance of surviving for five years. Last, appellants note that appellee's own medical expert, Dr. Lippman, testified in his deposition that appellant Norma Davison will more likely than not die from her cancer.

■ Appellee argues that because appellant Norma Davison has not yet had a recurrence of her cancer, she has suffered no injury. Appellee distinguishes *Shapiro* from the case *sub judice* by noting that in *Shapiro,* the plaintiff's cancer had recurred. Appellee distinguishes *Tomcik* by questioning an authority relied upon by the Court of Claims and by noting that the Court of Claims merely stated that the plaintiff's life expectancy had been reduced and gave no other details. Last, appellee argues that in light of the fact that appellant Norma Davison has not yet suffered a recurrence of her cancer, Dr. Singer's opinion that she will succumb to cancer "is not probative on the issue of any shortened life expectancy."

We reject appellee's argument that the fact that appellant Norma Davison's cancer has not yet recurred bars her from recovering for a shortened life expectancy. Appellee cites no authority in support of this argument. Appellee has presented no evidence to prove that the current length of the remission of appellant Norma Davison's cancer has increased her life expectancy, and thus effectively negated any life expectancy decrease caused by appellee's alleged malpractice.[1]

■■ We agree with the Eighth District's opinion in *Shapiro* that a shortened life expectancy is a cognizable injury. Although the plaintiff in *Shapiro* failed to present sufficient proof that the defendant's negligence was the direct and proximate cause of the plaintiff's reduced life expectancy, in the case *sub judice* appellants have presented the proof necessary to survive appellee's motion for summary judgment. Dr. Singer, in his deposition, testified that (1) appellant Norma Davison would have had an eighty-five percent chance of surviving for five years if the cancer had been detected in August 1989, (2) she would have had a sixty percent chance of surviving for five years if the cancer had been detected in January 1990, and (3) due to the delay in diagnosis, she has only a twenty-five percent chance of surviving for five years.

Appellee relies upon *Cooper* in support of his argument. We note that after the parties submitted their briefs in this appeal, the Ohio Supreme Court overruled *Cooper.* In *Roberts v. Ohio Permanente Med. Group, Inc.* (1996), 76 Ohio St.3d 483, 668 N.E.2d 480, paragraph one of the syllabus, the court held as follows:

"In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of

---

1. In this appeal we do not decide whether an increase in a plaintiff's life expectancy due to a remission during the course of a lawsuit can effectively negate a decrease in life expectancy caused by the defendant's negligence.

harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death. (*Cooper v. Sisters of Charity of Cincinnati, Inc.* [1971], 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97, overruled.)"

In the *Roberts* opinion, the court explained its reasoning in pertinent part as follows:

"In revisiting *Cooper*, we recognize that our court has traditionally acted as the embodiment of justice and fundamental fairness. Rarely does the law present so clear an opportunity to correct an unfair situation as does this case before us. The time has come to discard the traditionally harsh view we previously followed and to join the majority of states that have adopted the loss-of-chance theory. A patient who seeks medical assistance from a professional caregiver has the right to expect proper care and should be compensated for any injury caused by the caregiver's negligence which has reduced his or her chance or survival. Over the years, medical technology has improved and advances have been made in the treatment of many areas of medicine, including cancer. However, these medical strides are meaningless unless early detection is practiced diligently by those in the health care field. Thus, a health care provider should not be insulated from liability where there is expert medical testimony showing that he or she reduced the patient's chance of survival. Unfortunately, under the traditional view, this is precisely the outcome. The innocent patient is the loser while the health care provider escapes liability despite his or her negligence.

"We can no longer condone this view and consequently overrule *Cooper v. Sisters of Charity of Cincinnati, Inc., supra.* Instead, we recognize the loss-of-chance theory and follow the approach set forth in Section 323, Restatement of Torts. Under this view, we hold as follows: In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death. Once this burden is met, the trier of fact may then assess the degree to which the plaintiff's chances of recovery or survival have been decreased and calculate the appropriate measure of damages. The plaintiff is not required to establish the lost chance of recovery or survival in an exact percentage in order for the matter to be submitted to the jury. Instead, the jury is to consider evidence of percentages of the lost chance in the assessment and apportionment of damages. See *McKellips [v. St. Francis Hosp., Inc.* (Okla. 1987) ] *supra,* 741 P.2d [467] at 475."

We acknowledge that we can distinguish *Roberts* from the case *sub judice* in two respects. First, *Roberts* was a wrongful death action and the case *sub judice*

is not a wrongful death action. Second, the plaintiff in *Roberts* sought damages for loss of the patient's chance of survival, and appellant Norma Davison seeks damages for a shortened life expectancy. Despite these differences between *Roberts* and the case *sub judice,* we find that *Roberts* supports appellants' position. In *Roberts,* the court held that in order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical evidence demonstrating that the defendant's negligent act or omission increased the risk of harm to the plaintiff. In the case *sub judice,* appellants satisfied that requirement by presenting evidence that if appellant Norma Davison's cancer had been diagnosed in a timely manner by appellee, appellant Norma Davison would have had an increased chance of survival.

█ Lastly, we note that appellee argues that in light of the fact that appellant Norma Davison has not yet suffered a recurrence of her cancer, Dr. Singer's opinion that she will succumb to cancer "is not probative on the issue of any shortened life expectancy." We believe that argument addresses the weight rather than the admissibility of the evidence.

Accordingly, based upon the foregoing reasons, we sustain appellants' second assignment of error.

*Judgment reversed*
*and cause remanded*
*for further proceedings*
*consistent with this opinion.*

STEPHENSON and HARSHA, JJ., concur.