DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment that ordered Lavetta Sites, Wanda Jenkins and Paul Johnson, respondents below and appellants herein, removed from their positions as Rock Hill School District Board of Education members.
 {¶ 2} Appellants assign the following error for review and determination:
"AS A MATTER OF LAW, THE EVIDENCE PRESENTED BY THE PETITIONERS IN THE TRIAL BELOW, FAILED TO ESTABLISH SUFFICIENT EVIDENCE TO SUPPORT AN ORDER REMOVING THE RESPONDENTS FROM THEIR DULY ELECTED OFFICE WITH THE ROCK HILL BOARD OF EDUCATION."
 {¶ 3} Lloyd Evans began his employment with the Rock Hill Local School District (district) in 1965.[1] In 1978, he became superintendent. That same year, Appellant Lavetta Sites began her district employment as a payroll clerk. Apparently, they had conflicts over time that worsened in 2000 when Evans refused to support hiring Sites' son as an athletic coach. After that episode, Sites' husband reportedly threatened "to get" Evans for the perceived slight.[2]
 {¶ 4} In 2002, Lloyd Evans retired. Nevertheless, the Rock Hill Local School Board (board) rehired him as superintendent under a two year contract. In November 2003, the voters elected Sites and Appellant Paul Johnson to the board. Before they took office, however, the board awarded Evans a new five year contract. In December 2003, Sites, before she became an official board member, contacted several attorneys to "clarify" the status of Evans' contract.
 {¶ 5} On January 6, 2004, the newly reconstituted board held an "organizational meeting" and elected Sites president.[3]
On January 12, 2004, Sites contacted the Vorys, Sater, Seymour 
Pease law firm (Vorys) to discuss Evans' contract. At the board's January 15, 2004 regular session meeting, Appellant Wanda Jenkins,[4] another board member, moved to grant Sites the authority to engage a law firm "in her sole and absolute discretion." Sites stated that Vorys attorneys had drafted the motion for her. When board member Jackie Harris asked Sites why they needed an attorney, her question was dismissed as "irrelevant." On January 20, 2004, Vorys sent Sites a letter that described its fees and detailed other terms of its proposed representation. Sites returned an executed copy of the letter to Vorys on January 23, 2004 and accepted their terms for district representation.
 {¶ 6} At the February 25, 2004 special meeting, Sites, Johnson and Jenkins voted to go into "executive session" to discuss personnel matters. Board member Jackie Harris was present at the meeting, but refused to participate in what she considered an "illegal" meeting. Also, board member Troy Hardy was absent. In executive session, Sites read aloud from a Vorys "opinion letter" that apparently concluded that Evans' contract violated Ohio law. Sites did not allow other members to see the letter, nor was a copy included in this proceeding. Sites, Jenkins and Johnson thereupon determined that Evans' five year contract was void and that his current two year contract should not be renewed. The board then notified Evans by mail that his employment had been terminated.
 {¶ 7} In March 2004, Evans attended the board meeting to discuss the matter. Sites informed Evans that his last day of employment would be in July and that if he did not agree, he could hire counsel and file a lawsuit. When board member Troy Hardy suggested that the board "buy out" Evans' contract, Sites rejected the idea because Evans had not sufficiently "humble[d] himself down enough." Evans apparently followed Sites' advice and subsequently the Common Pleas Court determined that his five year contract was indeed valid and his termination unlawful.[5]
 {¶ 8} The board unsuccessfully attempted to fill the vacant superintendent position and on August 17, 2004, with the start of the school year fast approaching and no one in place to oversee day to day operations, appellants voted to turn over district affairs to the Lawrence County Educational Center Governing Board (ESC Board). Appellants all voted in favor of this resolution, while Harris and Hardy voted against it.
 {¶ 9} In December 2004 the board once again gained Control of the district. By that time, however, the conflict had taken a toll. Between January and November 2004, the board incurred over $127,000 in legal fees in its attempt to terminate Evans. Also, board meetings became so contentious that Sites proposed that uniformed deputies keep order.
 {¶ 10} District residents apparently grew weary of the problems and began a petition drive to remove Sites, Jenkins and Johnson from office. Eventually, a sufficient number of electors signed petitions and on March 28, 2005, a complaint for the removal of Sites, Jenkins and Johnson was filed. The complaint asserted various instances of misfeasance and malfeasance including, inter alia, sunshine law violations, abuse of power, perjury, mishandled funds and board policy violations. Sites, Jenkins and Johnson denied the allegations.
 {¶ 11} At the three day jury trial in October 2005, both sides painted very different pictures of the board's actions. Appellees' evidence indicated that Sites used her position to execute her vendetta against Evans, and that Jenkins and Johnson acquiesced to her plan. Harris and Hardy, the other board members, testified that they had no meaningful participation in the matter, and when they questioned Sites about board activities with respect to Evans, she rebuffed them. Harris and Hardy also had little success in obtaining information from Vorys. Vorys forwarded legal invoices directly to Sites' home address and, when Harris and Hardy sought information from Vorys about their services, the firm responded that it would only deal with Sites.
 {¶ 12} By contrast, Sites denied that she had a vendetta against Evans. Rather, she contended that her actions were motivated by what she perceived to be an unlawful contract. Jenkins and Johnson both acknowledged that Sites is a friend and someone they trusted.
 {¶ 13} After hearing the evidence and counsels' arguments, the jury determined to remove the three board members from office. This appeal followed.
 {¶ 14} Before we review the merits of the assignment of error, we must first resolve a threshold jurisdictional issue. Ohio courts of appeals possess appellate jurisdiction over final orders. See Section 3(B)(2), Article IV, Ohio Constitution. A final order is an order that, inter alia, affects a substantial right and is made in a special proceeding. See R.C.2505.02(B)(2). If a judgment is not a final order, appellate courts do not have jurisdiction to consider the judgment and the appeal be dismissed. See Davison v. Reni (1996),115 Ohio App.3d 688, 692, 686 N.E.2d 278; Prod. Credit Assn. v. Hedges
(1993), 87 Ohio Ap.3d 207, 210, 87 Ohio App.3d 207,621 N.E.2d 1360; Kouns v. Pemberton (1992), 84 Ohio App.3d 499, 501,617 N.E.2d 701.
 {¶ 15} In the case at bar, appellees' petition's prayer for relief requested attorney fees. Further, after the trial court issued its judgment against appellants, appellees filed a motion and requested $61,415.87 in fees plus $1,398.00 advanced as costs. Lawrence County responded with a memorandum contra that argued against an attorney fee award. To date, this issue has not been resolved.
 {¶ 16} It is well settled that a judgment that defers adjudication of an attorney fee request does not constitute a final appealable order, Ft. Frye Teachers Assn. v. Ft. FryeLocal School Dist. Bd. of Edn. (Jul. 27, 1993), Washington App. No. 93CA01; Vannoy v. Capital Lincoln-Mercury Sales, Inc. (Jun. 1, 1993), Ross App. Nos. 1868 1871, and neither is a judgment that awards such fees but defers adjudication of the precise amount. State, ex rel. VanMeter v. Lawrence Co. Bd. of Commrs.
(Aug. 25, 1992), Lawrence App. No. 91CA25; Baker v. Eaton Corp.
(Dec. 10, 1990), Stark App. No. CA-8235. Here, the trial court's failure to resolve appellees' attorney fee request renders the judgment against appellants interlocutory. Thus, we are required to dismiss the appeal for lack of jurisdiction.
 {¶ 17} On May 24, 2006 we ordered the parties to file supplemental briefs to address this issue. Appellees conceded that this Court "lacks jurisdiction over the appeal," although they, understandably, preferred to see "the matter come to a conclusion." Appellants argued that our previous jurisprudence on undetermined attorney fees should not apply here because the "taxpayers of Lawrence County" will be responsible for those fees rather than themselves. "In effect," they continue, "the motion involves a "dispute between appellees and a non-party to the litigation."
 {¶ 18} Although appellants raise an interesting point, we find this logic unavailing for two reasons. First, the attorney fee request was not simply a demand that appellees later advanced by motion. If that were the issue, we could resolve the problem by treating the court's silence on the matter as a sub silento
decision to overrule the request.[6] That is not the situation, however. We note that appellees' prayer for relief included an attorney fee demand and is part of their claim that must be addressed.
 {¶ 19} Second, the party who ultimately pays the attorney fees is largely irrelevant for purposes of determining if a judgment is a final appealable order. By analogy, if this action was a personal injury case and liability was determined but damages were not, it makes no difference that damages would ultimately be paid by an insurer rather than the tortfeasor. Judgments that determine liability, but not damages, do not constitute final appealable orders.[7]
 {¶ 20} The same is true here. Appellees claim against appellants included an attorney fee request. It is irrelevant whether appellants or some other entity will pay those fees. The fact remains that the attorney fee request is part of appellees claim for relief and that claim has not yet been resolved.
 {¶ 21} For these reasons, we find that the judgment appealed herein is neither final nor appealable and, thus, we lack jurisdiction to review the judgment. Accordingly, the appeal is hereby dismissed.
APPEAL DISMISSED.[8]
 JUDGMENT ENTRY
It is ordered that the appeal be dismissed and that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J. Kline, J.: Concur in Judgment Opinion.
[1] This appeal represents another chapter in the tumultuous history of the Rock Hill Local School District. Other cases that involve disputes within the district include In re Election ofMember of Rock Hill Bd. of Edn. (1996), 76 Ohio St.3d 601,669 N.E.2d 1116; Scherer v. Rock Hill Local School Dist. Bd. ofEdn. (1990), 63 Ohio App.3d 555, 579 N.E.2d 525; In re Steed
(Jul. 27, 1989), Lawrence App. No. 1909.
[2] The record also indicates that another conflict arose over Sites' severance pay when she retired from the district.
[3] The record contains two different copies of minutes — one that shows a January 6th organizational meeting was held and the other that shows a January 8th meeting. Because the testimony indicates that this meeting occurred on January 6th, we include that date in our analysis.
[4] Wanda Jenkins has been a school board member since the early 1980s. She is a friend and first-cousin to Lavetta Sites, and a friend to Paul Johnson.
[5] See Evans v. Rock Hill Local School Dist. Bd. of Edn.,
Lawrence App. No. 04CA39, 2005-Ohio-5318, at ¶ 8. That judgment was appealed and we dismissed the case for lack of jurisdiction. Id. at ¶ 21.
[6] Motions not expressly ruled on are deemed impliedly overruled. See Takacs v. Baldwin (1995), 106 Ohio App.3d 196,209, 665 N.E.2d 736; Kline v. Morgan (Jan. 3, 2001), Scioto App. Nos. 00CA2702 00CA2712; State v. Hall (Feb. 17, 1993), Gallia App. No. 92CA2 3.
[7] See Horner v. Toledo Hosp. (1993), 94 Ohio App.3d 282,290, 640 N.E.2d 857; McKee v. Inabnitt (Sep. 26, 2001), Adams App. No. 01CA711; Miller v. Biggers (Aug. 13, 2001), Scioto App. No. 00CA2751.
[8] We are well aware of the importance of resolving any future appeal of this matter as expeditiously as possible. Therefore, once the attorney fee issue is resolved, the parties may, if they so desire, submit this case on the same briefs they have previously filed herein and we will place this case on an expedited basis for final determination.