OPINION
{¶ 1} Plaintiff-Appellant Orthopedics and Sports Medicine, Incorporated ("OSMI") appeals from the July 3, 2006 Journal Entry of the Union County Court of Common Pleas overruling a Motion to Vacate the Court's Judgment and Entry of April 7, 2006 and modify amounts due to Defendant-Appellee R. Mark Stover, D.O. ("Stover").
 {¶ 2} OSMI is a professional corporation engaged in the practice of orthopedic medicine at Doctors Hospital West, located in Franklin County, Ohio and at Memorial Hospital of Union County ("Memorial Hospital"), located in Marysville, Ohio. Stover is an orthopedic surgeon, and was both employed by and a shareholder in OSMI. As part of his employment with OSMI, Stover entered into an Employment Agreement and a Buy-Sell Redemption Agreement, both of which contained covenants not to compete. These covenants barred Stover from practicing medicine or surgery at Doctors Hospital West and Memorial Hospital of Union County for a period of two years following any termination or separation from OSMI. *Page 2 
 {¶ 3} On or about April 23, 2004 Stover resigned from OSMI, effective October 8, 2004. However, on May 25, 2004 OSMI terminated Stover effective July 31, 2004. In August of 2004, Stover opened an office in Marysville where he practiced orthopedic surgery. He also practiced orthopedic surgery at the Marysville Surgical Center and continued working both on the staff and as Chief of Surgery at Memorial Hospital.
 {¶ 4} OSMI filed suit against Stover in Union County, alleging violation of the covenants, breach of contract, and breach of fiduciary duty. OSMI then filed a motion for summary judgment on the grounds "that as a matter of law orthopedic surgery may not be practiced at the Marysville Surgical Center." Stover also filed a motion for summary judgment arguing that the covenants were unenforceable as a matter of law. On March 18, 2005 the trial court filed its Decision and Judgment Entry granting partial summary judgment in favor of each party. The court certified its judgment as final, and neither party appealed.
 {¶ 5} On February 21, 2006 Stover filed a motion for an order for OSMI to appear and show cause why it should not be held in contempt for failing to pay monetary benefits to Stover as ordered by the court. The court conducted a hearing on Stover's motion on March 27, 2006. In its April 7, 2006 Judgment Entry the court found that OSMI was obligated to pay Stover $103,000.00 in continuation pay and $57,017.00 in bonuses. As OSMI had failed to pay Stover as *Page 3 
ordered by the court on March 18, 2005, the court found OSMI in contempt of court. However, the court provided OSMI with the opportunity to purge itself of contempt by paying Stover the bonus and continuation pay past due within 30 days of the date of the March 27, 2006 hearing. The court also stated that "[u]pon motion of the Plaintiff, the Court will hear further evidence on the amount of bonus owed providing Plaintiff moves the Court for a further hearing within thirty (30) days." Additionally, the court permitted the parties to submit briefs on the question of denial of further monetary benefits to Stover by May 15, 2006.
 {¶ 6} On July 3, 2006 the court entered a Journal Entry stating as follows:
 "After consideration of the data and memoranda filed in support of and in opposition to the Motion to Vacate the Court's Judgment and Entry of April 7, 2006, and to modify amounts found to be due Defendant Mark Stover from Plaintiff Orthopedics and Sports Medicine, Inc., Motion to vacate and modify is OVERRULED. Plaintiff shall now pay the amounts indicated in said Entry, together with applicable statutory interest, on or before July 20, 2006."
 {¶ 7} OSMI now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED ON JULY 3, 2006, WHEN IT ORDERED APPELLANT ORTHOPEDICS AND SPORTS MEDICINE INC. (HEREINAFTER "OSMI") TO PAY CONTINUATION PAY AND BONUSES TO APPELLEE, DR. R. MARK STOVER. *Page 4 
 {¶ 8} In its sole assignment of error, OSMI alleges that the trial court erred in ordering it to pay money to Stover because OSMI has complied with the March 18, 2005 Judgment Entry and because Stover is also indebted to OSMI.
 {¶ 9} Prior to reviewing OSMI's assignment of error, we must first determine whether the March 18, 2005 Judgment Entry partially granting OSMI's motion for summary judgment and partially granting Stover's motion for summary judgment was a final appealable order.
 {¶ 10} Appellate courts have jurisdiction to review the final orders or judgments of inferior courts in their district. See, generally, Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2505.02. The issue of jurisdiction to hear an appeal may be raised sua sponte. SeeDavison v. Rini (1996), 115 Ohio App.3d 688, 686 N.E.2d 278. However, absent a final order, this court is without jurisdiction to affirm, reverse or modify an order from which an appeal is taken. Barth v.Barth 8th Dist. No. 83063, 2003-Ohio-5661. A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order. Circelli v. KeenanConstr. (2006), 165 Ohio App.3d 494, 500, 847 N.E.2d 39.
 {¶ 11} R.C. 2505.02(B) provides, in relevant part, as follows:
 An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following: *Page 5 
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 (3) An order that vacates or sets aside a judgment or grants a new trial;
 (4) An order that grants or denies a provisional remedy . . .
We note that only the first category is relevant to our present determination.
 {¶ 12} Under the first category of R.C. 2505.02, an order must affect a substantial right, determine the action, and prevent a judgment before it may be considered a final appealable order. If an order fails to satisfy any of these criteria, it is not final. Kelm v. Kelm (1994),93 Ohio App.3d 686, 690, 639 N.E.2d 842 citing Stewart v. MidwesternIndemn. Co. (1989), 45 Ohio St.3d 124, 543 N.E.2d 1200.
 {¶ 13} In the present case, the court's March 18, 2005 Decision and Judgment Entry stated that OSMI had "failed to show any loss of income or loss of patients or other business." Additionally, the court noted that OSMI "failed to show irreparable damages, in that filed documentation of incomes has not declined since Dr. Stover was terminated." The court also found that the Memorial Hospital restriction was reasonable.
 {¶ 14} In addition, the court held that Stover "should be prohibited from practicing medicine and surgery at Memorial Hospital as well as Doctors Hospital West," and granted summary judgment in favor of OSMI on that portion of its *Page 6 
motion. The court also held that "Dr. Stover's continuing as Chief of Surgery or on the staff of Memorial Hospital of Union County for the balance of the two year prohibited term would be in violation of the agreement" and prohibited Stover from such activity during that time. However, the court found that Stover's "practice of medicine at the Marysville Surgical Center is not in violation of the terms and conditions of the non-competition agreement" and granted Stover's motion for summary judgment in this respect. Furthermore, the court held that Stover was "entitled to the monetary benefits due him under the contract between the parties, including bonuses and continuation of monthly payments as scheduled."
 {¶ 15} At the end of its Decision and Judgment Entry, the court stated as follows:
 On each Motion for Summary Judgment, JUDGMENT ACCORDINGLY. The Court finds no just reason for delay, under the provisions of Civil Rule 54. There remain no further issues in this case, and this is a final appealable order. Costs to Plaintiff.
 {¶ 16} OSMI argues that the trial court did not determine in its March 18, 2005 Judgment Entry how much compensation was due Stover under the contract between the parties. Instead, OSMI maintains that the payment amount was left to the parties to calculate. OSMI argues that the amount of payment was subsequently determined during the separate equitable enforcement proceeding *Page 7 
where the parties presented evidence and testimony, and which resulted in the trial court's July 3, 2006 Order currently before this court.
 {¶ 17} In contrast, Stover argues that the essence of OSMI's assignment of error is that the trial court erred in ordering OSMI to pay money to Stover because Stover is indebted to OSMI. However, Stover alleges that this argument is applicable to the March 18, 2005 Judgment Entry; a final appealable order that OSMI failed to appeal. Therefore, Stover contends that by failing to perfect a timely appeal, OSMI has not preserved the right to challenge the trial court's original determination that Stover had not damaged OSMI and that OSMI was obligated to pay Stover according to the terms of the employment agreement. Accordingly, Stover argues that OSMI's appeal is barred by the doctrine of res judicata.
 {¶ 18} The Supreme Court of Ohio has held that "[a]n existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit."Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226
citing Rogers v. Whitehall (1996), 25 Ohio St.3d 67, 69,494 N.E.2d 1387. The Supreme Court of Ohio also held that "[t]he doctrine ofres judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Id. *Page 8 
 {¶ 19} However, in Davis v. Finch (1961), 115 Ohio App.104,184 N.E.2d 596, the Tenth District held that summary judgment on an issue of liability alone, leaving the question of damages to be later determined, is interlocutory in character and not appealable. Accordingly, the interlocutory nature of such an order precludes immediate appeal.Summit Petroleum, Inc. v. K.S.T. Oil Gas Co., Inc. (1990),69 Ohio App.3d 468, 470, 590 N.E.2d 1337 citing Cammack v. V.N. Holderman Sons (1973), 37 Ohio App.3d 79, 80-81, 307 N.E.2d 38.
We note that even though the trial court in this case stated "[t]he Court finds no just reason for delay, under the provisions of Civil Rule 54" and that "[t]here remain no further issues in this case, and this is a final appealable order" these statements are of no consequence because the exact amount of a monetary judgment was not ordered by the court. A trial court cannot transform that which is not, by its nature, a final appealable order, into the same by mere appellation. Summit Petroleum,Inc., (1990), 69 Ohio App.3d at 470.
 {¶ 20} Accordingly, we must find that the March 18, 2005 Judgment Entry was an interlocutory order and cannot be considered a final appealable order subject to appeal to this court. Therefore, contrary to Stover's assertions, OSMI's appeal of the July 3, 2006 Journal Entry is properly before this court and is not barred by the doctrine of res judicata. *Page 9 
 {¶ 21} However, because the court's summary judgment order was not a final appealable order until the court determined the exact amount of damages attached to the judgment, and because OSMI's assignment of error alleges that the trial court erred in ordering OSMI to pay continuation pay and bonuses to Stover, we must review the summary judgment in its entirety.
 {¶ 22} An appellate court reviews a grant of summary judgment independently, without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. Hasenfratz v. Warnement 3rd
Dist. No. 1-06-03, 2006-Ohio-2797 citing Lorain Nat'l. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R.56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R.56(C); see Horton v. Harwich Chem.Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. *Page 10 
 {¶ 23} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R.56(E).
 {¶ 24} In the present case, both OSMI and Stover filed motions for summary judgment. OSMI moved for summary judgment on the grounds that orthopedic surgery may not be practiced at the Marysville Surgical Center as a matter of law. Stover moved for summary judgment on the grounds that the covenants not to compete were unenforceable as a matter of law.
 {¶ 25} Prior to determining the merits of the parties' motions for summary judgment, we must first note the relevant contractual provisions at issue in the present case.
 {¶ 26} Section 5.1 of the Employment Agreement specifically addresses the "Covenant Not to Compete" and states:
 Except in his capacity as an employee of the Corporation, no Physician-Employee shall engage, either alone or in association *Page 11 
 with others, in any practice of medicine or surgery, or any related occupation, profession, or practice, at Doctors Hospital West, 5100 West Broad Street, Columbus, Ohio, or at Memorial Hospital of Union County, Marysville, Ohio, during the Physician-Employee's employment with the Corporation and for a period of two (2) years from the date of any termination of such employment.
Section 5.2 addresses "Remedies" and provides as follows:
 Default of the covenant in section 5.1 shall release the Corporation from all obligations for payment of any salary, bonus, or other benefits, including Income Continuation Payments, due after the date of default under this Agreement. Notwithstanding the foregoing and in addition to stopping all such payments due after the date of default, the corporation shall be entitled to pursue any other rights and remedies it may have at law, including taking appropriate proceedings before any court of competent jurisdiction to enforce such covenant and enjoin any action which is a default thereof.
 {¶ 27} Section 4 of the Employment Agreement addresses "Termination and Payment Upon Termination." Section 4.3 addresses Pro-Rata Salary and provides, in relevant part, as follows:
 Upon termination of the Physician-Employee's employment hereunder, the Physician-Employee . . . shall be entitled to receive the amount of the Physician-Employee's allocation under section 3.1(c)(1) prior to the effective date of termination, computed on a pro-rata basis up to and including the effective date of termination and the amount of the Physician-Employee's allocation under section 3.1(c)(2) based upon his Productivity Ratio . . . *Page 12 
 {¶ 28} Section 4.4 addresses Income Continuation and provides direction for calculating the income continuation benefit. It provides, in relevant part, as follows:
 Each Physician-Employee shall be entitled to 12 Income Continuation Payments, plus interest, as provided in this section 4.4, subject to the limitation of section 4.5. Physician-Employees who are not Physician-Employees at the time of termination shall not be entitled to any Income Continuation Payment.
 (a) Calculation. The Income Continuation Payment and interest payable to any terminated Physician-Employee shall be calculated by the Corporation's independent public accountant pursuant to the following guidelines:
 (1) Each of the 12 "Income Continuation Payments" shall be equal to the "Agreed Percentage" of the Corporation's "Last 12 Months of Gross Income Per Physician-Employee" divided by 12 . . .
The Buy-Sell Redemption Agreement states as follows:
 3.1. Covenant. The Shareholder shall not engage, either alone or in association with others, in any practice of medicine or surgery, or any related occupation, profession, or practice, at Doctor's Hospital West . . . or at Memorial Hospital of Union County . . . during the Shareholder's employment with the Corporation and for a period of two (2) years from the date of any termination of such employment
 3.2. Remedies. Default of the covenant in section 3.1 shall release the Corporation from all obligations for payment of any salary, bonuses or other benefits due after the date of default under any Employment Agreement and for payment of the purchase priced and all accrued interest thereon for any of the defaulting Shareholder's Shares due after the date of default under section 2. Notwithstanding the foregoing and in addition to stopping all such payments due after the date of default, the Corporation shall be entitled to pursue any other rights and remedies it may have at law, including taking appropriate *Page 13 
 proceedings before any court of competent jurisdiction to enforce such covenant and to enjoin any action with is a default thereof.
 {¶ 29} The Employment Agreement and Buy-Sell Redemption Agreement are subject to the general rules governing the construing of contracts. The construction of written contracts is a matter of law, and courts will give common words in a written instrument their plain and ordinary meaning, unless an absurd result would follow or there is clear evidence of another meaning from the face or overall contents of the instrument.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,374 N.E.2d 146, paragraphs one and two of the syllabus. The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in their agreement. Rock of Ages Memorial, Inc. v.Braido 7th Dist. No. 00BA50, 2002-Ohio-605 citingGraham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313,667 N.E.2d 949. In arriving at the meaning of any part of the contract, the instrument must be read in its entirety in order to give effect to the intention of the parties. Id. citing Stocker Sitler, Inc. v.Metzger (1969), 19 Ohio App.2d 135, 142, 250 N.E.2d 269. When terms included in an existing contract are clear and unambiguous, an appellate court cannot create a new contract by finding intent not expressed in the clear and unambiguous language of *Page 14 
the existing written contract. Hamilton Ins. Serv., Inc. v. NationwideIns. Cos. (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898.
 {¶ 30} Upon review of the record, we find that the language contained in the Employment Agreement and Buy-Sell Redemption Agreement is clear and unambiguous. We also note that Stover signed both Agreements and the relevant Amendments to both Agreements. If, in fact, Stover violated the covenants not to compete by practicing medicine at Memorial Hospital after his date of termination, we find that the plain language of the Employment Agreement and the Buy-Sell Agreement would prohibit Stover from receiving continuation pay and bonuses from OSMI.
 {¶ 31} However, we find that genuine issues of material fact exist as to whether Stover's acting as Chief of Surgery or by performing "on call" duties at Memorial Hospital acted to violate the covenants not to compete contained within the Agreements.
 {¶ 32} In his motion for summary judgment, Stover states that OSMI did not receive any compensation as a result of his serving as Chief of Surgery at Memorial Hospital, nor did it suffer any financial loss as a result of his continuing to so serve. Stover also argues that his acting as Chief of Surgery was at the request of physicians and administrators associated with Memorial Hospital and *Page 15 
that OSMI took affirmative action to require him to practice at Memorial Hospital after he had left the employment of OSMI.
 {¶ 33} Specifically, Stover states that on August 29, 2004, OSMI, through its President Dr. Baker, sent a letter to the Chief of Staff of Memorial Hospital[1] and sent another letter to physicians practicing in Union County.[2] Stover argues that in essence, OSMI through Dr. Baker, mandated that Stover practice as an orthopedic surgeon at Memorial Hospital despite the clear wording of the covenants not to compete. During his deposition, when asked "Is it true that you told Dr. Evans to put Dr. Stover on the call list," Dr. Baker testified in relevant part, as follows:
 ". . . we had asked multiple times for Dr. Stover to be put on the call schedule and that was not handled at the hospital by Dr. Evans. So in order to provide the call schedule, I advised him that how we would . . . how much we would take call for, we would rotate." * * * "I believe it was in September, after Dr. Stover had left had been off for a month we gave them time it put him on the call schedule."
 * * *
 "I asked him [Evans] to put him [Stover] on the call schedule"
Additionally, when asked "What were the consequences to OSMI when Dr. Stover was not on the call schedule" Dr. Baker testified:
 "[t]hat's part of the medical staff citizenship is to provide emergency room call for the hospital and the community. That's what you're responsible to do and that wasn't being done and therefore, it was a burden on us . . ." *Page 16 
 * * *
 ". . . He was already on staff. There was no transition. All they had to do was make out a call schedule and put him on the call schedule, but it wasn't being done. Nobody seemed on (sic) to take the leadership to do it. So I took the leadership to encourage them to do it."
Furthermore, Stover notes that when asked if it was in the best interest of the hospital that Dr. Stover take call, Dr. Baker stated:
 "It was in everybody's interest that he take call . . . It put the emergency room physicians in a bind, it put us in a bind and we had problems with patients coming into the emergency room and wanting to go to Dr. Stover . . . yet I did it for a reason. I did it for a patient care reason."
 {¶ 34} Accordingly, Stover alleges that the covenants not to compete may not be enforced by reason of the doctrine of waiver. Specifically, Stover contends that OSMI waived its right to enforce the covenants by requesting that Stover do that which is specifically proscribed by the covenants, i.e. perform call during August and September, 2004; thereby practicing medicine at Memorial Hospital.
 {¶ 35} In contrast, OSMI argues that Stover's motion for summary judgment should be denied because genuine issues of material facts exist. Furthermore, OSMI contends that Stover's argument that this action may be resolved under Civ.R. 56 would require the court to invade the province of the jury and ignore Ohio case law concerning the enforceability of covenants not to compete. Specifically, OSMI argues that restrictive covenants must be evaluated on a case by case basis and that their reasonableness is a question for the jury. *Page 17 
 {¶ 36} Additionally, OSMI submits that Stover's argument that OSMI has waived the right to enforce the covenants is a question of fact for the jury, "so long as there is evidence from which a waiver may legally be found." OSMI submits that there is evidence present, such as Dr. Baker's denial that a waiver occurred,[3] to create an issue of fact for the jury to decide.
 {¶ 37} Based on the foregoing, we find that it is not possible to determine whether Stover violated the covenants not to compete until the genuine issues of material fact concerning Stover's post-termination employment as staff physician and Chief of Surgery at Memorial Hospital are resolved.
 {¶ 38} Therefore, OSMI's sole assignment of error is sustained. The March 18, 2005 and July 3, 2006 judgments of the Union County Court of Common Pleas granting partial summary judgment in favor of Stover and OSMI and ordering OSMI to pay Stover $103,000.00 in continuation pay and $57,017.00 in bonus pay are reversed and vacated. Accordingly, this matter is remanded to the trial court for trial.
Judgment Reversed and Cause Remanded
 ROGERS, P.J. and PRESTON, J., concur.
[1] Attached as Exhibit B to Stover's motion for summary judgment.
[2] Attached as Exhibit C to Stover's motion for summary judgment.
[3] OSMI points to the affidavit of Dr. Baker, attached as Exhibit C to its motion for summary judgment, to support its argument that there are factual issues present and that Dr. Baker denied waiving the right to enforce the covenants not to compete against Dr. Stover. *Page 1