{¶ 42} I respectfully dissent from the Majority Opinion. I appreciate the Majority Opinion's approach to this case and recognize that this is not an easy case. The law on the subject of shortened life expectancy is not as pristine as needed in resolving the myriad of issues raised in this case.
 {¶ 43} In Davison v. Rini,[1] the Fourth Appellate District Court offered guidance when it explained our holding in the 1978 case ofShapiro v. Burkons,[2] which involved the issue of shortened life expectancy. The district court concluded that both it and this court had recognized the shortened life expectancy as a cognizable injury. Whether this court adopted shortened life expectancy in the Shapiro case is open to debate. However, Davison was clear that shortened life expectancy is a cognizable injury and suggested it is distinguishable from loss chance because the loss chance injury is more compatible with wrongful death torts than that of shortened life expectancy. Shortened life expectancy denotes that the plaintiff-patient is alive at the time of the case, and the primary complaint is that the plaintiff-patient has lost life time or will lose life time because of the defendant-doctor's negligence. *Page 18 
 {¶ 44} Davison[3] adopted the following issue, which this court developed in Shapiro:
 "`[T]he primary issue to be determined by this court in the case at bar is whether after construing the evidence most strongly in favor of the appellants, an inference may reasonably arise that the alleged negligence by appellee was, in probability, the direct and proximate cause of appellant's reduced life span. Stated differently, the issue is whether appellant adduced sufficient probative evidence from which it may be inferred that her medical prognosis probably would have been better were it not for the alleged negligence of the appellee.'"
Shapiro used traditional proximate causation and relied on Cooper v.Sisters of Charity of Cincinnati, Inc.'s[4] pronouncement that the only way to prove proximate cause is by evidence that showed with a prompt diagnosis the patient would have probably survived.
 {¶ 45} In Roberts, the Ohio Supreme Court rejected this approach and in McMullen v. Ohio State University Hospitals,[5] the Ohio Supreme Court stated that in these increased risk cases the causation is relaxed. Additionally, the Indiana Supreme Court offered the following as further clarification on the matter:
 "Money is an inadequate substitute for a period of life, but it is the best a legal system can do. The alternative is to let a very real and very serious injury go uncompensated even if due to negligent *Page 19 treatment. Faced with that choice, we hold that the plaintiff has stated a viable cause of action * * *. * * * [W]e hold that [the plaintiff] may maintain a cause of action in negligence for this increased risk of harm, which may be described as a decreased life expectancy or the diminished probability of long-term survival."[6] (Emphasis added.)
 {¶ 46} The plaintiff-patient's lawyers maintained in their briefs and at oral argument that this is a shortened life expectancy case and relied on Davison. However, Davison does not offer theRoberts-McMullen relaxation of causation premise. Consequently, I believe that Roberts is controlling, and that Turner has established his cause of action and the jury's verdict should be affirmed.
 {¶ 47} The plaintiff-patient is an African-American male who was over 60 years old and in an at-risk group for prostate cancer. According to the expert-doctor, in January 1997, the plaintiff-patient should have been screened for prostate cancer. The parties agreed that this prompt diagnosis did not occur, and in 2000 when the cancer was detected, it had spread outside the area of the prostate.
 {¶ 48} The expert-doctor testified that the plaintiff-patient would succumb to the cancer in two years, which is in the year 2008. To this date, he has not succumbed, but the expert-doctor remained adamant that the spread of the cancer would kill him. Under the state of the present case law, a jury could find that the plaintiff-patient had a zero chance of survival and the delayed diagnosis shortened his life *Page 20 
expectancy. In Shapiro, this court held that the plaintiff's burden was to present evidence sufficient to establish the discoverability of the cancer.
 {¶ 49} Here, the expert-doctor was consistent that this cancer was discoverable in 1997. Furthermore, he opined that the failure to promptly diagnose the cancer resulted in a shortened life span.
 {¶ 50} The expert-doctor believed that the cancer was potentially curable. In Davison, that court used language such as "probably would have been better" when assessing the patient's life span or survival. I truly see no difference between "potentially curable" and "probably would have been better." Neither establishes a probability of curability, and under McMullen and Roberts, causation is relaxed and the expert-doctor's opinion that the cancer was potentially curable is sufficient.
 {¶ 51} I appreciate that the Majority Opinion believes that plaintiff-patient's case should fail because the expert failed to testify about the percentages of curability or diminished chance of recovery. In Roberts, the Ohio Supreme Court stated that a trial court must instruct the trier of fact to consider the expert testimony presented and (1) determine the total amount of damages from the date of the alleged negligent act or omission, including but not limited to lost earnings and loss of consortium; (2) ascertain the percentage of the patient's lost chance of survival or recovery; and (3) multiply that percentage by the total amount of damages. The Roberts' formula is equally usable in shortened life expectancy damages but not *Page 21 
mandated; consequently, the jury had all of the testimony needed to enable it to assess the dollar value of Mr. Turner's shortened life expectancy damages as well as his other damages.
 {¶ 52} The expert-doctor testified that the plaintiff-patient would succumb within two years after 2006. The plaintiff-patient's lawyers argued his life expectancy was age 70 and his life was shortened by 8 years in addition to his other damages, pain and suffering, loss of life enjoyment, plus the wife's loss of consortium. Under these facts, the jury is perfectly able to determine the appropriate damage award by concluding that Mr. Turner had zero percentage of survival and calculating his damages based on eight years shortened life expectancy.
 {¶ 53} Additionally, when I reviewed Roberts, I failed to see any requirement that the plaintiff-patient's case fails when the testimony is not presented in percentages. I understand that inDavison,[7] the expert-doctor testified that the plaintiff had an 85% chance of recovery with a prompt diagnosis and the recovery was diminished to 25%, when the diagnosis was delayed. Here, the expert-doctor stated that the plaintiff, with prompt PSA screening, had a likelihood of recovery. He eventually opined that a prompt diagnosis would have resulted in a potential cure. Because the expert doctor was steadfast that the plaintiff-patient would die in two years, it was not necessary for him to testify in percentages either to curability or *Page 22 
diminished recovery. The jury had sufficient information to judge the general and specific damages once they concluded that the defendant-doctor's delay in diagnosis increased his inability to live to his life expectancy, which to me is lost time or loss chance.
 {¶ 54} I would affirm the jury's verdict.
[1] (1996), 115 Ohio App.3d 688.
[2] (1978), 62 Ohio App.2d 73.
[3] Davison at 695, quoting Shapiro at 78.
[4] (1971), 27 Ohio St.2d 242, overruled in Roberts v. OhioPermanente, Inc. (1996), 76 Ohio St.3d 483.
[5] (2000), 88 Ohio St.3d 332.
[6] Alexander v. Scheid (2000), 726 N.E.2d 272, 281.
[7] (1996), 115 Ohio App.3d 688. *Page 1