DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment in favor of Wayne Jones and Victoria Jones, plaintiffs below and appellants herein, on their claims against McAlarney, Pools, Spas Billiards, Inc. ("McAlarney"), defendant below and appellee herein.
 {¶ 2} Appellants assign the following errors for review:[1]
 FIRST ASSIGNMENT OF ERROR: *Page 2 
"HAVING FOUND THE CONSUMER SALES PRACTICES ACT APPLIED, THE COURT ERRED IN FINDING THAT PLAINTIFF FAILED TO SHOW THAT A DECEPTIVE, UNFAIR OR UNC0NSCIONABLE ACT OR PRACTICE OCCURRED WITH RESPECT TO THE TRANSACTION."
 SECOND ASSIGNMENT OF ERROR:
 "THE COURT ERRED IN MAKING NO DETERMINATION OR FINDINGS WITH RESPECT TO OHIO REVISED CODE § 1345.03(B) BY FAILING TO EXAMINE CIRCUMSTANCES CITED BY THE STATUTE."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN NOT FINDING THE CONTRACT VOID OR VOIDABLE DUE TO IMPOSSIBILITY OF PERFORMANCE AND/OR THAT THE DEFENDANT FAILED TO MITIGATE THE DAMAGE WITH RESPECT TO SAID CONTRACT NOT BEING ENTITLED TO LOST NET PROFITS."
 {¶ 3} On February 25, 2005, appellants entered into a contract with McAlarney for a pool to be installed at their home for $17,400.[2]
Appellants returned to McAlarney the following day and paid an $8,000 deposit.[3] For one reason or another, the pool was not installed and McAlarney did not repay the deposit.
 {¶ 4} Appellants filed the instant action and alleged breach of contract, a Consumer Sales Practices Act violation and unjust enrichment. They asked for the return of their deposit, together statutory interest, costs and attorney fees. McAlarney *Page 3 
denied liability.
 {¶ 5} At the bench trial both parties adduced very different accounts why the contract was not performed. Victoria Jones testified that she attempted to contact McAlarney the next Monday after the contract was executed to inform them that the ground is too unstable for a pool due to "slippage" from water draining down a hill behind their home. Gerald Davis, an excavator hired by appellants, confirmed the "slippage" problems and related that he advised appellants not to proceed with the pool.
 {¶ 6} Douglass Schott, the McAlarney salesperson with whom appellants had contact, gave an entirely different account. He testified that appellants did not contact him right away. Rather, he contacted Victoria Jones several weeks later to set up an inspection of the property and she told him to inspect the premises in her absence. Schott stated that on March 11, 2005, appellants told him that they wanted to cancel the contract.
 {¶ 7} Wayne McAlarney, the owner of the business, testified that he had a conference call with appellant and her credit card company when she attempted to cancel the contract. Appellant supposedly conveyed during the call that she and her husband decided against buying the pool because they planned to sell their house.[4] The witness further revealed that prior to starting his business in 1983, he worked as an excavator and had repaired many "slips" like the one at appellants' property. He also related that he visited the premises and, with some modifications, the pool could be *Page 4 
installed.
 {¶ 8} The trial court issued its judgment and awarded McAlarney the profit it expected from the transaction ($5,400), as well as a "restocking fee" that had to be paid to its wholesaler to return materials for the pool. The court, however, also found that appellants are entitled to return of the remainder of their deposit and awarded them a $2,425 judgment, plus statutory interest. This appeal followed.
 I {¶ 9} Initially, we consider a threshold jurisdictional issue. The dissent asserts, citing a recent Ohio Supreme Court decision, that this court lacks jurisdiction to review this case because the complaint's prayer for relief contains an unaddressed attorney fee request. InInternatl. Bhd. Of Electrical Workers, Local Union No. 8 v. VaughnIndustries, L.L.C., 116 Ohio St.3d 335, 879 N.E.2d 187, 2007-Ohio-6439, at paragraph two of the syllabus, the court held that "[w]hen attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ.R. 54(B), an express determination that there is no just reason for delay, is not a final, appealable order." We disagree with the dissent's views, although we acknowledge that the broad language inVaughn is somewhat difficult to comprehend and to apply.
 {¶ 10} Occasionally, civil complaints set forth separate and distinct claims for attorney fees. See Civ.R. 8. As a practical matter, however, almost every civil complaint includes in its prayer for relief apro-forma request for attorney fees. Trial courts generally ignore the requests in the latter category. Appellate courts, in turn, typically treat requests for attorney fees included in a prayer for relief as having been *Page 5 
overruled sub silento, unless a trial court specifically (1) raises the attorney fee issue and defers its adjudication, or (2) awards attorney fees and defers the determination of the amount of fees. In either of those events, we have historically dismissed the appeal for lack of a final appealable order. See, e.g., Ft. Frye Teachers Assn. v. Ft. FryeLocal School Dist. Bd. of Edn. (1993), 87 Ohio App.3d 840, 843,623 N.E.2d 232; Vannoy v. Capital Lincoln-Mercury Sales, Inc. (Jun. 1, 1993), Ross App. Nos. 1868 1871; Cole v. Cole (Nov. 8, 1993), Scioto App. No. 93CA2146; Pickens v. Pickens (Aug. 27, 1992), Meigs App. No. 459; State ex rel. VanMeter v. Lawrence Co. Bd. of Commrs. (Aug. 25, 1992), Lawrence App. No. 91CA25.
 {¶ 11} Again, we acknowledge that the Vaughn syllabus does lend some support to the view that no final order exists in the case at bar. We further acknowledge that if the broad syllabus language is construed in that fashion, it will result in the dismissal of practically every appellate case on jurisdictional grounds, even when the attorney fee issue is truly irrelevant to the action. Accordingly, we believe that the Vaughn syllabus should be considered and applied in light of the underlying facts in that particular case. See Musick v. Dutta167 Ohio App.3d 269, 854 N.E.2d 1114, 2006-Ohio-2864, at ]}13; State v.Collins (Oct. 21, 1999), Cuyahoga App. No. 75503. In Vaughn, the attorney fee claim arose out of R.C. 4115.16(D) (which allows such an award to a successful employer in a prevailing wage claim), R.C. 2323.51
and Civ.R. 11. None of those statutes and rules have been invoked in the case sub judice. Generally, Ohio follows the "American Rule" and does not permit an attorney fee award absent statutory authority. SeePainters Supply Equip. Co. v. Wagner, Lucas App. No. L-07-1320,2008-Ohio-258, at]}16; Stonehenge Land Co. v. Beazer Homes. Invst.,L.L.C., Franklin *Page 6 App. No. 07AP-449 07AP-559, 2008-Ohio-148, at ]}34. Thus, in the absence of specific statutory or rule authority invoked as a basis for an attorney fee request (which is not the situation in the instant case), a party is not entitled to an attorney fee award and we should treat the fee request as having been overruled sub silento.
 {¶ 12} In summary, we do not believe that, for purposes of a final order analysis, a request for attorney fees set forth in a complaint's prayer for relief should be equated to a separate and distinct claim for attorney fees included in the body of a complaint or other pleading. Thus, a general request for attorney fees included in a prayer for relief should not be elevated to the status of a separate claim for relief. See R.C. 2505.02 and Civ.R. 54(B).[5]
 II {¶ 13} We next proceed, out of order, to appellants third assignment of error which posits two separate and distinct arguments. First, appellants assert that the trial court erred by not finding that the contract was void or voidable due to impossibility of performance. We disagree.
 {¶ 14} The underlying premise for this first part of their argument is that *Page 7 
"slippage" on the property prevented the installation of the pool. Although appellants adduced evidence to that effect, Wayne McAlarney contradicted that evidence and testified that the slippage could be fixed and the pool could be installed on the property.
 {¶ 15} It is axiomatic that the trier of fact must resolve questions concerning the weight of evidence and witness credibility. Cole v.Complete Auto Transit, Inc. (1997), 119 Ohio App.3d 771, 777-778,696 N.E.2d 289; Jacobs v. Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466 at ¶ 31. The rationale for deferring to the trier of fact on these issues is that a trier of fact is best situated to view the witnesses, to observe their demeanor, gestures and voice inflections and to use those observations to weigh credibility. See Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Further, a trier of fact may choose to believe all, part or none of the testimony of any witness.Rogers v. Hill (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438;Stewart v. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35, 42,623 N.E.2d 591.
 {¶ 16} In the case sub judice, the trial court apparently found McAlarney's testimony more credible and this is a determination reserved for the trier of fact. We find no error in this regard.
 {¶ 17} The second argument in appellants' third assignment of error is that the trial court erred by awarding McAlarney its lost profit on the transaction because McAlarney failed to mitigate damages. We agree that McAlarney may not have taken steps to avoid damages, but for several reasons we find no error.
 {¶ 18} The doctrine of avoidable consequences (sometimes referred to as a "duty to mitigate") holds that one who is injured by another is not entitled to recover *Page 8 
damages for any harm that could have been avoided by the use of reasonable efforts or expenditure thereafter. See Johnson v. UniversityHospitals of Cleveland (1989), 44 Ohio St.3d 49, 57, 540 N.E.2d 1370; Calamari Perillo, Contracts (2d Ed. 1977) 528, § 14-8. A determination of whether the efforts expended by an injured party were reasonable, or whether damages could have been avoided, is typically a question for the trier of fact. Grooms v. Southern States Maysville Co-Op. (May 28, 1998), Adams App. No. 97CA634; Bradley v. Pentajay Homes (Jul. 3, 1991), Athens App. No. CA1458.
 {¶ 19} In the case sub judice, McAlarney testified that he had not sold any of the materials that he acquired for the specific type of pool that appellants ordered. Also, McAlarney had not returned the materials to his supplier because he would be forced to pay a "restocking fee" and restocking would damage his "credibility" with his distributor "real bad." The trial court apparently determined that McAlarney had done all that it could reasonably do to avoid damages without incurring extra expense or injury to its business reputation. Thus, we conclude that ample evidence was adduced at trial to support the court's conclusion.
 {¶ 20} More important, however, we believe that appellants' argument is based on a misunderstanding of how the trial court awarded damages. The court did not award damages to McAlarney to compensate it for materials purchased to build the pool that the company could then re-sell to mitigate its expenses. Rather, the court awarded damages for the company's "lost profit." This is a well established measure of damages for a breach of construction contract. See e.g Calamari 
Perillo, supra at 559, § 14-28 (If no work was done, the contractor is entitled to the profit he would have *Page 9 
made measured by the difference between the contract price and the cost of performance).
 {¶ 21} Appellants do not explain how McAlarney could have "mitigated" a lost profit. Even if McAlarney sold the same pool to another landowner, this would not compensate McAlarney for lost profit on the work that it had contracted to do for appellants. The company would still lose the subsequent profit it would have received if appellants had performed their obligations under the contract.
 {¶ 22} Appellants also claim that Wayne McAlarney's testimony concerning lost profit was too speculative. We disagree. The owner testified that he had been in this business for twenty-three (23) years and typically built in a profit margin of about $5,400 on each job. Generally, established businesses can prove lost profits with sufficient certainty on transactions in which the business has traditionally engaged. See Calamari Perillo, supra at 530, § 14-8.
 {¶ 23} McAlarney admitted that the profit was an estimate, but explained that this is because it depends on how "the job goes." If the company required fewer construction materials, the profit margin would be greater. If they required more, the margin would be less. Because "the job" was not completed, it is impossible to determine the profit margin with mathematical certainty. That said, we are not persuaded that the trial court, sitting as the trier of fact, erred in accepting McAlarney's testimony and awarding the company its lost profit as damages.
 {¶ 24} For these reasons, we hereby overrule appellants' third assignment of error.
 III *Page 10 {¶ 25} We now turn to appellants' first and second assignment of errors that we consider together. In these assignments of error, appellants advance several arguments to the effect that the trial court erred in finding that McAlarney did not engage in deceptive sales practices. We find no merit in these arguments.
 {¶ 26} Reviewing courts must presume that a trial court's findings of fact in a Consumer Sales Practices Act (CSPA) case are correct and those findings should not be reversed because of differences of opinion as to weight of the evidence or credibility of witnesses. Borror v. MarineMaxof Ohio, Inc., Ottawa App. No. OT-06-010, 2007-Ohio-562, at ]}47. In the case sub judice, the trial court did not accept the many alleged instances of "deceptive" practices.
 {¶ 27} Appellants also assert that the trial court simply ignored some of the CSPA provisions. Specifically, they cite R.C.1345.03(B)(5)(6) which lists various factors for a court to consider to determine whether an act or practice is unconscionable including,inter alia, whether a transaction is "substantially one-sided" and a transaction involved a "misleading statement of opinion." Id. We do not believe that the trial court ignored these statutory factors, but rather dismissed them as being inapplicable to this case.
 {¶ 28} Appellants also claim that the contract was substantially one-sided because McAlarney had special knowledge of problems that could occur with installation. We disagree. Every contractor has special knowledge of potential problems that may occur on a project. Oftentimes, customers may not be aware of those problems and that is why they seek the expertise of the contractor. Carried to its logical conclusion,reductio ad absurdum, appellants would have us label *Page 11 
"unconscionable" or adhesionary every construction contract in which a contractor is more familiar than the customer with the type of work to be performed.
 {¶ 29} As for a "misleading statement" under R.C. 1345.03 (B)(6), appellants point to a McAlarney employee's trial testimony and to answers provided in pre-trial interrogatories. Even assuming,arguendo, that these statements are misleading, they were made to appellants' counsel during a pending case, not when the contract for installation of the pool was consummated.
 {¶ 30} As the trial court apparently did, we find these deceptive CSPA allegations meritless. Consequently, we hereby overrule appellant's first and second assignments of error.
 {¶ 31} Having reviewed all errors assigned and argued by appellants in their brief, and having found merit in none of them, the trial court's judgment is affirmed.
JUDGMENT AFFIRMED.
[1] Appellants' brief does not contain a separate statement of the assignments of error as required by App.R. 16(A)(3). We have taken the assignments of error from the "table of contents."
[2] Appellants' brief combines the "statement of facts" with the "statement of the case." This is improper. See Civ.R. 16(A)(5)(6);State v. Vandal (Jan. 26, 2000), Medina App. No. 2983-M. Furthermore, appellants neglected to include a statement of issues presented for review as required by App.R. 16(A)(4).
[3] Appellants entered into a second contract the same day for installation of a spa system. That contract is not at issue in this case.
[4] Victoria Robinson conceded that they did not sell the house, although she claimed that they had tried unsuccessfully to do so.
[5] As an aside, the dissent points out that in In re Sites, Lawrence App. No. 05CA39, 2006-Ohio-3787, at ¶ 16, this court dismissed an appeal due to the failure to resolve an attorney fee request included in the prayer for relief. A closer inspection, however, will dispel the notion that the Sites attorney fee issue is identical to the issue currently before us. In Sites, the attorney fee request was not made proforma and simply forgotten, but, rather, one party filed a detailed post-judgment motion and asserted that they were entitled to fees in excess of $61,000. Id. at ¶ 15. In that case, the issue was not ignored and, in fact, needed to be resolved before we addressed the merits of the appeal. By contrast, in the case sub judice appellants did not pursue their attorney fee request and would not have been entitled to such fees even if they had been pursued.