[Cite as *PC Surveillance.Net, L.L.C. v. Rika Group, Corp.*, 2012-Ohio-4569.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| PC SURVEILLANCE.NET, LLC, | ) | |
| | ) | CASE NO. 11 MA 165 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| RIKA GROUP CORP., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas Court, Case No. 09 CV 4828.

JUDGMENT: Reversed, Vacated and Remanded.

APPEARANCES:
For Plaintiff-Appellee: Attorney Jeffrey Kurz
219 W. Boardman Street
Youngstown, OH 44503

For Defendants-Appellants: Attorney Debra Horn
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Blvd., Suite 500
Cleveland, OH 44122

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio

Dated: September 27, 2012

DeGenaro, J.

**{¶1}** Defendants-Appellants, Rika Group Corporation and Ryan and Erika Temple, appeal the decision of the Mahoning County Court of Common Pleas, denying their motion to vacate the cognovit judgments entered in favor of Plaintiff-Appellee, PCSurveillance.net, LLC. On appeal, Rika Group and the Temples first argue that the cognovit judgments are void because the requirements of R.C. 2323.13 were not met. Second, they contend that the trial court abused its discretion in denying their Civ.R. 60(B) motions because they filed these motions timely and alleged meritorious defenses. Last, they assert that the cognovit judgments are not final appealable orders.

**{¶2}** These arguments are meritorious in part. The cognovit judgments were final appealable orders. However, the statutorily mandated warning language of R.C. 2323.13(D) was not printed either immediately above or below the guarantors' signature line; as a result of this deficiency the trial court lacked subject matter jurisdiction to enter cognovit judgment against the Temples and those judgments are void. As to the judgments against Rika Group, the failure to comply with the requirements of R.C. 2323.13(A), taking a cognovit judgment in either the county where the makers reside or signed the note, would render the judgments voidable. However, there is a factual issue of where the cognovit notes were signed that we are unable to resolve upon this record, and must be resolved by the trial court on remand. Finally, Appellants met all three elements of their Civ.R. 60(B) motions and are entitled to relief from judgment. Accordingly, the judgment of the trial court is reversed and vacated, and the case is remanded for further proceedings.

### Facts and Procedural History

**{¶3}** On March 6, 2008, PCSurveillance entered into a purchase and sale agreement with Rika Group for the sale of PCSurveillance's business assets for $1,350,000. The purchase agreement required Rika Group to pay PCSurveillance $200,000 of the purchase price on closing and the remainder to be paid by execution of two cognovit promissory notes. Erika Temple, in her capacity as president of Rika Group, executed the two cognovit notes, in the amounts of $1,000,000 and $150,000,

both with 9% interest per annum. Erika and her husband, Ryan Temple, also signed personal guaranties on the cognovit notes.

{¶4} On December 22, 2009, PCSurveillance filed two complaints in cognovit against defendants Rika Group, Ryan, and Erika. On January 15, 2010, the trial court issued two orders granting judgment for PCSurveillance against the appellants, jointly and individually, in the amounts of $150,000 and $1,000,000, with 9% interest per annum from March 6, 2008, as prayed for in the complaint. Appellants were served with the judgment entries on January 22, 2010.

{¶5} On January 14, 2011, Appellants filed motions to vacate and/or relief from cognovit judgment. They moved the trial court to vacate the cognovit judgments on the grounds that they are void for lack of personal and subject matter jurisdiction or that the judgments are not final appealable orders. Alternatively, they requested relief from judgment pursuant to Civ.R. 60(B), claiming: 1) PCSurveillance is not the real party in interest and has no standing to assert any claims; 2) the judgments were obtained on guaranties containing no cognovit provisions; 3) the judgments were obtained for an incorrect amount; and, 4) the judgments were obtained based on an underlying fraudulent transaction. Appellants also requested that the motions be set for hearing. They attached a brief and several exhibits in support of their motions.

{¶6} On July 15, 2011, PCSurveillance, with leave of court, opposed Appellants' motions to vacate, alleging that the motions were untimely, that it was the real party in interest, that the judgments are final appealable orders, and that Appellants had provided no factual documentation to verify their claims of fraud. Furthermore, PCSurveillance alleged that the amount awarded by the trial court was accurate and actually gave Appellants a "discount" on the amount they owed to PCSurveillance. In support, it attached a brief and several exhibits. On August 22, 2011, PCSurveillance filed an addendum to its motion in opposition to Appellants' motions to vacate. It attached five affidavits to this addendum.

{¶7} On August 22, 2011, Appellants filed a supplemental brief and evidence in support of their motions to vacate and/or for relief from cognovit judgment. They

again argued that the cognovit judgments are void because the guaranties contained no cognovit language. They also asserted that the cognovit judgments are void because Appellants do not reside in Mahoning County and Rika Group signed the cognovit notes in Lorain County; thus, the Mahoning County Common Pleas Court lacked subject matter jurisdiction over them. They also argued additional evidence of fraud and attached several affidavits in support of this brief.

**{¶8}** On August 24, 2011, the trial court issued an order denying Appellants' motions to vacate, finding that the motions were untimely and even if Appellants had timely filed their motions, they had failed to establish a meritorious defense or meet the requirements of Civ.R. 60(B)(1),(3) and/or (5). The court further found that the cognovit judgments were final appealable orders and were not void.

### Final Appealable Order

**{¶9}** Appellants assert three assignments of error on appeal. They will be discussed out of order for ease of analysis. In their third assignment of error, Appellants assert:

**{¶10}** "The trial court erred as a matter of law in determining that the judgments were final and not interlocutory orders."

**{¶11}** Appellants contend that the cognovit complaint requested judgment for attorney fees and special damages, but the judgment entries did not dispose of the claims for attorney fees or special damages nor did the judgments contain Civ.R. 54(B) language. And because these claims are pending, the cognovit judgments are not final appealable orders and the court may vacate or modify them at any time without satisfying Civ.R. 60(B).

**{¶12}** Section 3(B), Article IV of the Ohio Constitution vests this court with jurisdiction to hear appeals only from final orders or judgments. "An order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable." *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989); *Chef Italiano Corp. v. Kent State University*, 44 Ohio St.3d 86,

541 N.E.2d 64 (1989), syllabus. Civ.R. 54(B) provides:

> When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

{¶13} In the order denying Appellants Civ.R. 60(B) relief, the trial court found that PCSurveillance's complaints contained only one claim, which was for enforcement of the cognovit notes, despite the standard language in the prayer for attorney fees and any other appropriate relief. The trial court stated that it granted judgment in favor of PCSurveillance and determined the action in a manner that affected substantial rights of Appellants. Because there was only one claim to consider, which the trial court granted judgment upon, the Civ.R. 54(B) language was not necessary. The trial court concluded that the cognovit judgments were final appealable orders, comparing them to the judgment in *Milstein v. Northeast Ohio Harness*, 30 Ohio App.3d 248, 507 N.E.2d 459 (8th Dist. 1986).

{¶14} In *Milstein*, the trial court entered judgment on the cognovit notes against the appellants, and subsequently denied the appellants' motion to vacate the cognovit judgment. *Id.* at 249. On appeal, the appellants contended that the trial court erred in failing to vacate the judgment because while the complaint sought attorney fees, the cognovit judgment did not award fees. The Eighth District held that:

Appellants would have us hold that a trial court is without authority to enter judgment which varies in any manner from the answer confessing judgment. We decline to do so. Clearly, a court may alter incorrect items in a confession of judgment before entering judgment thereon * * *. *Id.* at 252.

**{¶15}** More recently, the Ohio Supreme Court held that "when attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ.R. 54(B), an express determination that there is no just reason for delay, is not a final, appealable order." *Internatl. Bhd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187, ¶ 17. In *Vaughn*, the appellee's answer requested statutory attorney fees pursuant to R.C. 4115.16 and sanctions pursuant to Civ.R. 11, but the trial court's grant of summary judgment did not include the appellee's attorney fees claim or Civ.R. 54(B) language. *Id.* at ¶ 3, 9. Appellee then filed a post-judgment motion for attorney fees and costs. *Id.* at ¶ 5. The Ohio Supreme Court concluded that this summary judgment order was not final and appealable. *Id.* at ¶ 9.

**{¶16}** Three appellate districts, including this court, have limited *Vaughn's* application. As this court explained in *Ricciardi v. D'Apolito*, 7th Dist. No. 09 MA 60, 2010-Ohio-1016:

Two courts have limited the application of *Vaughn* by holding that the mere mention of attorney's fees in the answer to the complaint does not rise to the level of a separate claim for relief preventing a judgment from becoming a final appealable order. *See Knight v. Colazzo*, 9th Dist. No. 24110, 2008-Ohio-6613, ¶ 9; *Jones v. McAlarney Pools, Spas & Billiards, Inc.*, 4th Dist. No. 07CA34, 2008-Ohio-1365, ¶ 12. These two courts were concerned that an overly broad application of the *Vaughn* holding would require the dismissal of practically every civil appeal on jurisdictional grounds because most complaints contain a pro forma request for attorney's fees and this

request is usually ignored by the trial court when final judgment is rendered. The courts in these cases also acknowledge, however, that the *Vaughn* holding would apply if the request for attorney's fees was made pursuant to an express statute rather than as vague, unspecified or unsubstantiated request for attorney's fees. *See Knight* at ¶ 8-9; *Jones* at ¶ 11. We agree with the holdings and reasoning of the *Knight* and *Jones* cases. *Id.* at ¶ 9.

{¶17} PCSurveillance's complaints stated in the body: "As a direct and proximate result of the acts of the Defendants, Plaintiff has suffered damages including but not limited to, lost income, economic hardship, interest expense, Attorneys fees and other such losses." In its prayers for relief, PCSurveillance requested "[a]ttorney's fees and costs incurred by Plaintiff for this matter" and "[a]ny other recovery, including but not limited to, special damages that this Court may deem appropriate." This is a general request for attorney fees that was not made pursuant to specific statutory authority; similarly the request for special damages is sought in a general, pro forma fashion. Consistent with our rationale in *Ricciardi* and the Eight District's in *Milstein*, Civ.R. 54(B) language was not required and the cognovit judgments were final appealable orders. Accordingly, Appellants' third assignment of error is meritless.

### Void versus Voidable Cognovit Judgments
### Warrant Language

{¶18} In their first assignment of error, Appellants assert:

{¶19} "The trial court erred as a matter of law in denying Appellants' motions to vacate and/or relief from judgment."

{¶20} Appellants contend that the trial court lacked subject matter jurisdiction to enter the cognovit judgments against any of the Appellants because the statutory requirements in R.C. 2323.13 were not met. They first argue that the judgments against Ryan and Erika are void because the guaranties they signed do not comply with R.C. 2323.13(D).

{¶21} When cognovit instruments do not comply with the requirements of R.C.

2323.13(D), the trial court lacks subject matter jurisdiction to enter cognovit judgment, and judgment entered on such a cognovit note is void ab initio. *See Buehler v. Mallo*, 10th Dist. No. 10AP–84, 2010-Ohio-6349, ¶ 9; *National Laundry Equipment, Inc. v. Mow Mow, Inc.*, 10th Dist. No. 95APE03-254, 1995 WL 771436, *3 (Dec. 19, 1995). This court reviews matters of subject matter jurisdiction under a de novo standard of review. *Fifth Third Bank, N.A. v. Maple Leaf Expansion, Inc.*, 188 Ohio App.3d 27, 2010-Ohio-1537, 934 N.E.2d 366, ¶ 10 (7th Dist.).

**{¶22}** R.C. 2323.13(D) provides that:

A warrant of attorney to confess judgment contained in any promissory note, bond, security agreement, lease, contract, or other evidence of indebtedness executed on or after January 1, 1974, is invalid and the courts are without authority to render a judgment based upon such a warrant unless there appears on the instrument evidencing the indebtedness, directly above or below the space or spaces provided for the signatures of the makers, or other person authorizing the confession, in such type size or distinctive marking that it appears more clearly and conspicuously than anything else on the document:

"Warning--By signing this paper you give up your right to notice and court trial. If you do not pay on time a court judgment may be taken against you without your prior knowledge and the powers of a court can be used to collect from you regardless of any claims you may have against the creditor whether for returned goods, faulty goods, failure on his part to comply with the agreement, or any other cause."

**{¶23}** Specifically, Appellants contend that the guaranties do not contain the warning language of R.C. 2323.13(D) directly above or below the signature lines. Thus, the trial court had no authority to render cognovit judgments against Erika or Ryan because they only signed the guaranties in their individual capacities and did not

sign the cognovit notes. In response, PCSurveillance contends that each cognovit note and guaranty was one continuous document and that Erika and Ryan signed each note and guaranty as one document. It cites to affidavits from the brokers who facilitated the sale of the company and the attorney who confessed the judgments, attesting that each note and guaranty were a continuous document. PCSurveillance asserts that the notes and guaranties were all part of the same transaction and were meant to be considered together; it notes that these documents were executed at the same time and that the guaranties refer to their respective cognovit notes.

{¶24} Here, the warrants of attorney to confess judgment in the cognovit notes quote exactly the mandatory statutory warning language, which appear in bold, capital letters directly above the signature lines where Erika signed in her capacity as President of Rika Group. This conforms with the mandatory requirements of R.C. 2323.13(D), and the cognovit judgments against Rika Group are not void.

{¶25} However, regardless of whether the cognovit notes and guaranties were continuous documents, there are no warrants of attorney in the guaranties that comport with the statute. The guaranties do not contain the mandatory statutory warning language, in substance or format either directly above or below the spaces where Erika and Ryan signed in their individual capacities. Therefore, Erika and Ryan did not authorize the confession of judgment against themselves as individuals, and the trial court was without authority to render cognovit judgments against them. Thus, the cognovit judgments are void as to Erika and Ryan in their individual capacity.

### Proper Venue to Confess Judgment

{¶26} Second, Appellants contend that the cognovit judgments are void because the requirements of R.C. 2323.13(A) were not met and the Mahoning County Court of Common Pleas lacked subject matter jurisdiction to enter judgment. Because we have determined that the judgments against Erika and Ryan are void, we will only analyze this argument with respect to Rika Group.

{¶27} R.C. 2323.13(A) provides that judgment on a warrant of attorney may be confessed in any court in the county where any of the makers reside or signed the

warrant of attorney. The parties do not dispute that Rika Group did not reside in Mahoning County; rather they disagree where the warrants of attorney were signed. However, before we address Appellants' specific arguments, we must first address the effect of noncompliance with R.C. 2323.13(A) and whether it renders a cognovit judgment void or voidable.

{¶28} Arguing the failure to comply with R.C. 2323.13(A) renders a cognovit judgment void, Appellants cite to *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988). In *Patton*, the Ohio Supreme Court held that the trial court lacked jurisdiction under R.C. 2323.13(E) to enter judgment on a warrant of attorney based on a consumer transaction. Thus, the Court further held that because the trial court lacked subject matter jurisdiction, the cognovit judgment was void. *Id.* at 70.

{¶29} Relying on *Patton*, Ohio appellate courts have held that all the statutory requirements of R.C. 2323.13 must be satisfied in order for a court to enter a valid cognovit judgment or for a court to have subject matter jurisdiction over the note. *See, e.g., Klosterman v. Turnkey-Ohio, L.L.C.*, 182 Ohio App.3d 515, 2009-Ohio-2508, 913 N.E.2d 993, ¶ 19 (10th Dist.). Specifically, courts have held that if the judgment is not confessed in the county where any of the makers reside or where the note was signed, then the court lacks subject matter jurisdiction and the judgment is void ab initio. *See, e.g., Pheils v. Glass City Sales, LLC*, 3d Dist. No. 13-09-19, 2009-Ohio-4623, ¶ 16, citing *Patton* at paragraph three of the syllabus.

{¶30} However, between *Patton* and these appellate court decisions, there had been an intervening Ohio Supreme Court case in 2004 clarifying the distinction between void and voidable judgments. In *Pratts v. Hurley*, 102 Ohio St.3d 81, 806 N.E.2d 992 (2004), the Court stated that: "There is a distinction between a court that lacks subject-matter jurisdiction over a case and a court that improperly exercises that subject-matter jurisdiction once conferred upon it." *Id.* at ¶ 10. The Court explained that subject matter jurisdiction is the court's "power over a type of case" and when a court lacks this jurisdiction, it renders a void judgment. *Id.* at ¶ 11, 34. However, jurisdiction over a particular case concerns the court's authority "to determine a specific

case within that class of cases that is within its subject matter jurisdiction" and lack of jurisdiction over a particular case results in a voidable judgment. *Id.* at ¶ 12.

**{¶31}** In *Pratts*, a death-penalty case, the common pleas court failed to follow the statutory procedure of convening a three-judge panel to accept the defendant's guilty plea. The Ohio Supreme Court concluded that the trial court had subject matter jurisdiction over adult criminal cases but had improperly exercised that jurisdiction. *Id.* at ¶ 13, 34-35. Thus, this error resulted in a voidable judgment rather than a void one. *Id.* at ¶ 36.

**{¶32}** Then in 2009, the Fourth District decided a case where it found that a cognovit note was facially insufficient to support the judgment entered upon it. *Onda, LaBuhn, Rankin & Boggs Co., L.P.A. v. Johnson*, 184 Ohio App.3d 296, 2009-Ohio-4726, 920 N.E.2d 1000, ¶ 11 (4th Dist.) Although the court ultimately held that the trial court lacked subject matter jurisdiction and the judgment was void, it noted the possible application of the *Pratts* decision. *Id.* at ¶ 12-13. The appellate court explained:

> Subject-matter jurisdiction concerns the proper forum for a class of cases rather than the particular facts of an individual case. There is no dispute that, here, had the cognovit note had [sic] been valid, the trial court would have had subject-matter jurisdiction and could have rendered judgment in favor of appellee. Therefore, it seems incongruous that had it determined the cognovit note was invalid, the court would have lacked subject-matter jurisdiction to render judgment for appellant. Thus, in instances such as the case sub judice, a more proper analysis may be that the court exceeded its legal authority in the exercise of its discretion over the case, not that the court lacked the necessary subject-matter jurisdiction. Nevertheless, we are bound by the Supreme Court's decision in *Patton* and must conclude that the trial court's judgment is void for lack of subject-matter jurisdiction. *Id.* at ¶ 15.

**{¶33}** In 2010, we decided *Fifth Third Bank*, a case concerning whether a

foreign court had subject matter jurisdiction to enter cognovit judgment. In that case, we cited to *Onda*, noting that there is some disagreement over the extent to which failure to comply with R.C. 2323.13 affects subject matter jurisdiction, as opposed to the courts' territorial jurisdiction or jurisdiction over the particular case. *Id.* at ¶ 23, citing *Onda* at ¶ 13-15. However, we concluded that R.C. 2323.13 did not affect whether the foreign court had subject matter jurisdiction; thus, it was not necessary to enter the debate on how R.C. 2323.13(A) affects subject matter jurisdiction. *Id.* at ¶ 19, 23. However, the case sub judice is now the proper opportunity for us to address this issue.

**{¶34}** Because we are interpreting a statute, we must examine the statutory language in order to determine the legislative intent. *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 27. "[T]o determine the legislative intent behind a statute, we must read the language in context and we must construe related sections together." *Spencer v. Freight Handlers, Inc.*, 131 Ohio St.3d 316, 2012-Ohio-880, 964 N.E.2d 1030, ¶ 16. Accordingly, in interpreting R.C. 2323.13(A), we will examine R.C. 2323.13 as a whole:

> (A) An attorney who confesses judgment in a case, at the time of making such confession, must produce the warrant of attorney for making it to the court before which he makes the confession. Notwithstanding any agreement to the contrary, if the maker or any of several makers resides within the territorial jurisdiction of a municipal court * * *, or signed the warrant of attorney authorizing confession of judgment in such territory, judgment on such warrant of attorney shall be confessed in a municipal court having jurisdiction in such territory, provided the court has jurisdiction over the subject matter; otherwise, judgment may be confessed in any court in the county where the maker or any of several makers resides or signed the warrant of attorney. The original or a copy of the warrant shall be filed with the clerk.

(B) The attorney who represents the judgment creditor shall include in the petition a statement setting forth to the best of his knowledge the last known address of the defendant.

(C) Immediately upon entering any such judgment the court shall notify the defendant of the entry of the judgment by personal service or by registered or certified letter mailed to him at the address set forth in the petition.

(D) A warrant of attorney to confess judgment contained in any promissory note, bond, security agreement, lease, contract, or other evidence of indebtedness executed on or after January 1, 1974, is invalid and the courts are without authority to render a judgment based upon such a warrant unless there appears on the instrument evidencing the indebtedness, directly above or below the space or spaces provided for the signatures of the makers, or other person authorizing the confession, in such type size or distinctive marking that it appears more clearly and conspicuously than anything else on the document:

* * *

(E) A warrant of attorney to confess judgment contained in any instrument executed on or after January 1, 1974, arising out of a consumer loan or consumer transaction, is invalid and the courts shall have no jurisdiction to render a judgment based upon such a warrant.  * * *

* * *

**{¶35}**  As relates to subject matter jurisdiction, subsection (D) states that without the statutory warning language, the warrant of attorney "is *invalid* and the courts are *without authority* to render a judgment based upon such a warrant."  (Emphasis added.)  R.C. 2323.13(D).  Similarly, subsection (E) provides that a warrant of attorney based on a consumer loan or transaction "is *invalid* and the courts shall have *no jurisdiction* to render a judgment based upon such a warrant."  (Emphasis added.)  R.C. 2323.13(E).  This language explicitly states that when warrants of attorney do not

comply with these provisions, courts lack jurisdiction or authority to render a judgment on such a warrant. A judgment entered by a court that lacks subject-matter jurisdiction or authority to act is a void judgment. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 6.

**{¶36}** However, subsection (A) does not contain similar language. If the legislature intended subsection (A) to affect courts' subject matter jurisdiction, it would have included similar language as found in subsections (D) and (E). In absence of this explicit language, when the requirements of subsection (A) are not met, a court's judgment on such a cognovit note is voidable, not void.

**{¶37}** This interpretation is reinforced by applying the reasoning from *Pratts* and *Onda* to the case sub judice. "Subject-matter jurisdiction relates to the proper forum for an entire class of cases, not the particular facts of an individual case." *Fifth Third Bank* at ¶ 15. Here, the parties contest where the cognovit notes were signed. If the notes were signed in Mahoning County, there would be no issue whether the Mahoning County Court of Common Pleas had subject matter jurisdiction to enter judgment on the cognovit notes. *See* R.C. 2305.01. However, because the appellants allege that the notes were not signed in Mahoning County, they argue that the Mahoning County Common Pleas Court lacked subject matter jurisdiction. The issue of where the notes were signed relates to the particular facts of the case, not to the common pleas court's authority to hear this class of cases. Thus, if the cognovit notes were not signed in Mahoning County, then the court improperly exercised its authority over the case and granted a voidable judgment; it did not lack subject matter jurisdiction and grant a void judgment.

**{¶38}** We now proceed to address the issue of where the cognovit notes were signed. R.C. 2323.13(A) provides that judgment may be confessed in any court in the county where the makers signed the warrant of attorney. Thus, if the notes were signed by Rika Group in Youngstown, the Mahoning County Court of Common Pleas was a proper venue to confess judgment.

**{¶39}** Appellants argue that only Erika, in her capacity as president, signed the

cognovit notes on behalf of Rika Group. Appellants attached two affidavits to their supplemental brief; Erika attests that she signed the cognovit notes on behalf of Rika Group in Lorain County, and Ryan attests that he was present while Erika signed the notes in Lorain County. PCSurveillance contends that Ryan signed the cognovit notes and guaranties in Youngstown. It provided several affidavits attached to its addendum to its motion in opposition to support that Ryan signed these documents in Mahoning County. PCSurveillance also notes that the cognovit notes themselves indicate that they were signed in Youngstown.

**{¶40}** Only Erika signed the cognovit notes, in her capacity as president of Rika Group. The cognovit notes do contain a notation on the first page of each note that states, "Youngstown, Ohio." Courts have considered such a notation as evidence of where the note was signed. *See B & I Hotel Management* at ¶ 25; *Brown-Graves Co. v. Caprice Homes, Inc.*, 9th Dist. No. 20689, 2002 WL 347322, *2 (Mar. 6, 2002). However, Erika and Ryan's affidavits both refute that these notes were signed in Youngstown. Two of PCSurveillance's affidavits are from brokers who helped facilitate the sale of the business, Eric Ollila and Neal Barkett, who attested that Ryan had agreed to travel to Youngstown to sign the cognovit notes and guaranties and he contacted the brokers to confirm that he had signed these documents at law offices in Youngstown. Further, both Ollila and Barkett stated that after Ryan was introduced as the new owner of PCSurveillance, he took the documents to Erika to sign in Avon, Ohio, which is located in Lorain County. PCSurveillance also attached the affidavit of Stephan Karchut, who was one of the owners of PCSurveillance, who attested that the documents related to the purchase of PCSurveillance "were signed together as part of the same transaction and, to the best of my recollection, the transaction took place in Youngstown, Ohio."

**{¶41}** The record contains conflicting evidence regarding whether the cognovit notes were signed in Mahoning County or Lorain County. If Erika signed the cognovit notes in Lorain County as Appellants allege, then this error would make the judgment voidable pursuant to R.C. 2323.13(A). Improper venue constitutes a meritorious

defense for Civ.R. 60(B) purposes. *See First Nat. Bank of Pandora v. Freed*, 3d Dist. No. 5-03-36, 2004-Ohio-3554, ¶ 9 (meritorious defenses to a cognovit judgment include "deviation from proper procedures in confessing judgment on the note").

**{¶42}** Given the procedural posture of this case, that the motion to vacate was resolved via motion and affidavit, rather than at a hearing where the credibility of the witnesses can be assessed; the trial court must resolve the disputed factual issue of where the cognovit notes were signed. *See State ex rel. DeWine v. 9150 Group, L.P.*, 9th Dist. No. 25939, 2012-Ohio-3339, ¶ 25, 27 (remanding case for evidentiary hearing where record contained conflicting pleadings on the issue of personal jurisdiction).

**{¶43}** Thus, we remand this case for the trial court to determine the question of fact of where the cognovit notes were signed. Furthermore, because the statutory requirements in R.C. 2323.13(D) were not met, the trial court lacked subject matter jurisdiction to enter the cognovit judgments against Erika and Ryan in their individual capacities and those judgments are void because of the absence of the mandatory warning language either above or below the guarantors' signature line. Accordingly, appellants' first assignment of error is meritorious.

### Motion for Relief from Judgment – Civ.R. 60(B)

**{¶44}** In their second assignment of error, Appellants assert:

**{¶45}** "The trial court abused its discretion in denying appellants' motion to vacate and/or relief from cognovit judgment."

**{¶46}** Because the cognovit judgments against Erika and Ryan are void, those judgments have been vacated without the necessity of meeting the requirements of Civ.R. 60(B). This leaves us to resolve this assignment of error with respect to Rika Group only. Appellants contend that the trial court erred in denying their motions for relief from judgment because they timely filed these motions and alleged meritorious defenses.

**{¶47}** When reviewing a trial court's decision regarding a Civ.R. 60(B) motion, an appellate court will not reverse that decision unless the trial court abuses its discretion. *State ex rel. Russo v. Deters*, 80 Ohio St.3d 152, 153, 684 N.E.2d 1237

(1997). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.* "In order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a meritorious claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion." *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988), citing *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), at paragraph two of the syllabus. *See, also, Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994).

**{¶48}** "However, when the judgment from which relief is sought was entered on a cognovit note and, thus, was entered without notice to the defendant, the second *GTE* requirement is satisfied through Civ.R. 60(B)(5), any other reason justifying relief from judgment." *Masters Tuxedo Charleston, Inc. v. Krainock*, 7th Dist. No. 02 CA 80, 2002-Ohio-5235, ¶ 7. This is because "[c]ourts in this state have repeatedly held that cognovit judgments present special circumstances[.]" *Rieck Mechanical Elec. Services, Inc. v. Warner*, 2d Dist. No. 19078, 2002 WL 1252521, *2 (June 7, 2002). As this element of the *GTE* test has been met as a matter of law, we are left to resolve whether Rika Group's motion was timely filed and stated a meritorious defense.

### Timeliness

**{¶49}** First, Appellants contend that the trial court abused its discretion finding their Civ.R. 60(B) motions were not timely filed. The trial court granted the cognovit judgments against Appellants on January 15, 2010. Appellants were served on January 22, 2010 and filed their motions on January 14, 2011, almost one year after they were served with the cognovit judgments.

**{¶50}** Civ.R. 60(B) mandates that a motion for relief from judgment be filed within a reasonable time, and if the reason for relief is pursuant to Civ.R. 60(B)(1), (2), or (3), not more than one year after the court enters judgment. Because Appellants were entitled to relief under Civ.R. 60(B)(5), they had to file their motion within a reasonable time. "It has been explained that what is reasonable under the circumstances depends on the facts of each case. When a movant is aware that there

are grounds for relief and delays filing the motion, the courts will require the movant to explain the reasons for the delay." (Citations omitted.) *Ross v. Olsavsky*, 7th Dist. No. 09 MA 95, 2010-Ohio-1310, ¶ 27.

{¶51} Regarding the timeliness of Appellants' motions for relief from judgment, the trial court found that:

> Defendants in this matter have failed to provide a reasonable explanation for delay. Rather, Defendants essentially assert that their motions are timely because they were filed within one year of the filing of the judgment entries and that they were waiting to see what Plaintiff would do. * * * Defendants unreasonable delay and failure to provide a reasonable explanation supported by factual documentation for the same is fatal to their motions.

{¶52} Appellants argue that the trial court abused its discretion because they attached an affidavit from their attorney to their supplemental brief that explained their delay in filing. Counsel averred that Appellants had contacted him within weeks of the court entering the cognovit judgments, which he reviewed and determined that they were void, and contacted opposing counsel to attempt to resolve the case without filing a motion to vacate. Based on discussions with opposing counsel, he anticipated that there would be a resolution of the matter without filing a motion. He also averred that part of the basis for the motion to vacate relates to a federal court case for trademark infringement involving PCSurveillance, which required a substantial amount of research. During this time, he learned that Karchut was potentially incarcerated so it was unclear who to contact to discuss a resolution of the matter. Finally, he filed the motion to vacate when he determined that it did not appear that the parties would reach a resolution.

{¶53} Based on counsel's affidavit, Appellants were not simply waiting to see what PCSurveillance would do; they were attempting to resolve the matter so that it would not be necessary to file a motion for relief from judgment. "Depending upon the

circumstances, the carrying on of settlement negotiations may extend the time normally considered reasonable in the initiation of a challenge to a cognovit note." *Waldman Financial v. Digital Color Imaging, Inc.*, 9th Dist. No. 23101, 2006-Ohio-4077, ¶ 16, quoting *Cautela Bros. Cement Contractors v. McFadden*, 32 Ohio App.2d 329, 332, 291 N.E.2d 539 (10th Dist. 1972). Although the time between filing the cognovit judgments and the motions to vacate was lengthy, Appellants provided a detailed explanation for the delay. Furthermore, that explanation was reasonable, especially considering the timely and continued contact with PC Surveillance's counsel. Thus, the trial court's finding that Appellants failed to provide a reasonable explanation for the delay, and that the motions were untimely was an abuse of discretion.

## Meritorious Defense

**{¶54}** Second, Appellants argue that they alleged four meritorious defenses to the cognovit judgments. As discussed above, Rika Group has established a meritorious defense, specifically, whether Mahoning or Lorain County is the proper venue in which to confess judgment, satisfying this element of the *GTE* test. Thus, the trial court erred in concluding that Appellants failed to state a meritorious defense. In the interest of completeness we will address the other defenses that Appellants allege.

**{¶55}** "A meritorious defense exists when the movant specifically alleges operative facts that support a defense to the judgment." *Kadish, Hinkel & Weibel Co., L.P.A. v. Rendina*, 128 Ohio App.3d 349, 352, 714 N.E.2d 984 (8th Dist. 1998). The movant bears the burden of demonstrating a meritorious defense. *Rose Chevrolet* at 20. In order to satisfy that burden, the movant must merely allege operative facts which would support a meritorious defense, not prove that he or she will prevail on that defense. *Id.*

## Payment

**{¶56}** Appellants argue that they made payments on the cognovit notes, contending the trial court improperly awarded judgment on the full amount of the cognovit notes rather than the unpaid balance remaining on the notes after payment.

**{¶57}** Ohio courts have held that "[a] dispute about the amount actually owed

under the cognovit note is a meritorious defense to a cognovit note judgment." *Sadraoui v. Hersi*, 10 Dist., 2011-Ohio-3160, ¶ 16, citing *First Nat. Bank of Pandora* at ¶ 9; *Lewandowski v. Donohue Intelligraphics, Inc.*, 93 Ohio App.3d 430, 432-433, 638 N.E.2d 1071 (9th Dist. 1994).

**{¶58}** The parties' dispute centers on how to interpret the terms of the cognovit notes, how to calculate the unpaid balance remaining on the notes, and the amount of payments made on the notes. Appellants supported their motions with an affidavit from Ryan averring that from the date of the closing on the purchase agreement through the date of the cognovit judgments, Rika Group made periodic payments on the cognovit notes in the amount of $192,738.08. PCSurveillance apparently concedes that Rika Group made at least 12 months of payments on the cognovit notes; however, PCSurveillance contends the amount of the cognovit judgment was actually less than the full amount that the appellants owed.

**{¶59}** PCSurveillance contends that in addition to the $1,150,000, Appellants also owed an additional $55,000 for the inventory adjustment, as well as a 5% late fee and the full amount of interest listed in the amortization tables attached to the cognovit notes. PCSurveillance further argues that even if the interest was only owed on the 10 month period between the last payment and the filing of the complaint, the total balance owed would still exceed the amount of cognovit judgment. Appellants argue that the $55,000 cannot be included in the cognovit judgment because the letter agreement did not contain cognovit provisions. Furthermore, Appellants contend that the 5% late fee does not apply upon acceleration of the cognovit notes and that PCSurveillance could only request the accrued interest, not the full amount of unaccrued interest.

**{¶60}** The trial court calculated the amount owed on the cognovit notes and concluded that Appellants received credit for the payments they made and received a "discount" on the amount owed on the cognovit notes whether the 9% interest is calculated for the 10 month period before the complaint was filed or for the full amount of interest in the amortization tables.

**{¶61}** However, Appellants were only required to allege operative facts to support a meritorious defense, not prove that they will prevail on that defense. Appellants have challenged the amount of the cognovit judgments and alleged operative facts of payment on the notes that if true would be a defense to the claims for relief. However, the trial court analyzed the terms of the note and determined that Appellants could not prevail on their defense. Thus, the trial court abused its discretion, and Appellants' argument that they alleged a meritorious defense of payment has merit.

**Fraud**

**{¶62}** This court has held that fraud in the inducement is a defense to a cognovit judgment. *Second Natl. Bank of Warren v. Web Producers, Inc*, 7th Dist. No. 03-CO-68, 2004-Ohio-5786, ¶ 17.

**{¶63}** "In order to establish a claim for fraudulent inducement, a party must prove: '(1) a representation, or silence where there is a duty to disclose, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to its truth that knowledge may be inferred, (4) with the intent to mislead another into relying on it, (5) justifiable reliance on the representation, and (6) resulting injury proximately caused by the reliance.'" *Kennedy Mint, Inc. v. Print Wave, Inc.*, 8th Dist. No. 95371, 2011-Ohio-940, ¶ 15, quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998).

**{¶64}** Appellants assert that at the time of purchase, PCSurveillance represented that its inventory was new and worth approximately $125,000. However, according to Ryan's affidavit, after the sale was completed, Appellants discovered that much of the inventory was remanufactured and not sellable, already expensed, or old technology that was not sellable. Furthermore, Appellants contend that PCSurveillance was involved in a federal trademark lawsuit two years prior to the sale of the company to Rika Group, styled *GeoVision Inc. v. PCSurveillance.net, LLC.*, N.D.Ohio No. 4:06-CV-00649 (Aug. 8, 2006), and that business records of PCSurveillance reveal it continued to sell products that it had been forbidden from

selling by court order in *GeoVision*. These products had high profit margins that greatly inflated the value of the company at the time of the sale.

**{¶65}** Appellants refer to the affidavit of John Bonfiglio, their accountant, who was retained by Rika Group to assist in the valuation of PCSurveillance for the purchase. In performing the valuation, he reviewed financial records prepared by PCSurveillance, which included balance sheets and income statements from 2002 to 2007. Bonfiglio averred that his advice regarding PCSurveillance's value was influenced by these financial records, and Rika Group used his valuation to determine the purchase price. Finally, Bonfiglio averred that if PCSurveillance included sales that were in violation of a court order in these financial documents, these prohibited sales would inflate the value of the company.

**{¶66}** PCSurveillance contends that its involvement in *GeoVision* had very little effect on business, no negative effect on sales, and the matter was resolved long before the parties executed the purchase agreement. Furthermore, PCSurveillance asserts that Appellants knew of the lawsuit and performed an inventory inspection at the time of purchase. PCSurveillance points to the affidavit of Osamwonyi Johnson-Osayande, PCSurveillance's comptroller before and after the sale of the company to Rika Group. He attested that PCSurveillance had destroyed the inventory at issue in *GeoVision* prior to the execution of the purchase agreement. Johnson-Osayande further averred that he and Ryan inspected PCSurveillance's inventory in February 2008, none of which included inventory at issue in *GeoVision*. Before this inventory occurred, he and Karchut informed Ryan of the lawsuit and that all of the items, except a small box of defective parts, had been destroyed.

**{¶67}** PCSurveillance also contends that Appellants' own exhibits show that the inventory they claim inflated sales was actually destroyed prior to the purchase agreement. The *GeoVision* consent judgment states that PCSurveillance purchased $6,899 worth of DVR card products that infringed on GeoVision's copyright and received $13,080 in proceeds from the sale of these products. The consent judgment also states that PCSurveillance created unauthorized copies of software identical to

GeoVision software, and then distributed this counterfeit software. The judgment required PCSurveillance to destroy all of these products. Additionally, PCSurveillance signed a report stating that it had destroyed all products pursuant to the *GeoVision* consent judgment on July 17, 2006.

**{¶68}** The purchase agreement states that the parties agree that the purchase price is based upon an approximate inventory value of $125,000. However, this agreement also provides that valuation was to be determined jointly by the parties during a complete physical inventory the day before closing. The letter agreement provides that the parties agree that as of the closing date, the aggregate value of the inventory was $180,000. Thus, Appellants did not simply rely on PCSurveillance's representations that the inventory was worth $125,000. However, in Ryan's affidavit, he avers that after the purchase, he discovered that much of the inventory was not sellable or already expensed, despite Karchut's representations that the inventory was new.

**{¶69}** Furthermore, Appellants claim that after the *GeoVision* lawsuit, PCSurveillance continued to sell products in violation of the court order, and appellants relied on PCSurveillance's financial records in determining the purchase price for the company. While PCSurveillance provided evidence that this inventory was destroyed after the *GeoVision* consent judgment, this evidence does not prove that PCSurveillance actually destroyed these items.

**{¶70}** The trial court found that eyewitness accounts verified that Appellants knew of the lawsuit and the inventory at issue was destroyed long before the purchase agreement, and that Appellants had provided no documentation to the contrary and had not demonstrated how the value of the company was affected. The trial court weighed the evidence presented by both parties and believed the evidence submitted by PCSurveillance. Appellants did provide affidavits stating that PCSurveillance continued to sell the infringing products after the *GeoVision* lawsuit and that they relied on financial records including these sales to determine the purchase price of the company. These allegations do not prove that Appellants could succeed on a claim of

fraud, but these operative facts would support a meritorious defense of fraud. Accordingly, Appellants have alleged a meritorious defense of fraud.

## Breach of the Underlying Agreement

**{¶71}** Ohio courts have held that breach of the underlying agreement is not a meritorious defense to a cognovit judgment. *See Advanced Clinical Management, Inc. v. Salem Chiropractic Center, Inc.*, 5th Dist. No. 2003CA00108, 2004-Ohio-120, ¶ 19; *Saponari v. Century Limousine Service, Inc.*, 8th Dist. No. 83018, 2003-Ohio-6501, ¶ 20-21. Accordingly, Appellants' allegation that PCSurveillance breached the purchase agreement is not a meritorious defense to the cognovit judgments.

## Real Party in Interest

**{¶72}** Last, Appellants argue that PCSurveillance is not the real party in interest in this case and has no standing to pursue claims under the purchase agreement, cognovit notes, or the guaranties. Appellants note that in the purchase agreement, the seller is listed as a Florida limited liability company and the payee under the cognovit notes is also listed as a Florida LLC; however, Plaintiff-Appellee in this case is listed in the complaint as an Ohio LLC. Appellants contend that these two LLCs are separate legal entities, as evidenced by the articles of organization for each LLC that Appellants attached to their motions to vacate. However, a review of the record reveals that the address listed for PCSurveillance in its Ohio articles of organization is the same address listed for PCSurveillance in the cognovit notes. Thus, the Florida LLC and the Ohio LLC are the same company and Plaintiff-Appellee is the real party in interest. Accordingly, Appellants' allegation that Plaintiff-Appellee lacked standing is not a meritorious defense.

**{¶73}** Appellants have alleged meritorious defenses of venue, fraud and payment. Accordingly, the trial court abused its discretion finding that Appellants failed to meet this element of the *GTE* test.

## Conclusion

{¶74} In sum, Appellants' arguments are meritorious in part. The cognovit judgments were final appealable orders. However, the statutorily mandated warning language of R.C. 2323.13(D) was not printed either immediately above or below the guarantors' signature line; as a result of this deficiency the trial court lacked subject matter jurisdiction to enter cognovit judgment against the Temples and those judgments are void. As to the judgments against Rika Group, the failure to comply with the requirements of R.C. 2323.13(A), taking a cognovit judgment in either the county where the makers reside or signed the note, would render the judgments voidable. However, there is a factual issue of where the cognovit notes were signed that we are unable to resolve upon this record, and must be resolved by the trial court on remand. Finally, Appellants met all three elements of their Civ.R. 60(B) motions and are entitled to relief from judgment. Accordingly, the judgment of the trial court is reversed and vacated, and the case is remanded for further proceedings.

Waite, P.J., concurs.

Donofrio, J., concurs.