JUDGES: Hon. Gene Donofrio, Hon. Cheryl L. Waite, Hon. Mary DeGenaro
OPINION
DONOFRIO, J.
{¶ 1} Plaintiff-appellant, Eastern Ohio Regional Wastewater Authority, appeals the Belmont County Court of Common Pleas' decision to grant defendants-appellees', Utility Workers Union of America AFL-CIO Local Union 436-A ("Union"), Louis Fisher ("Fisher"), Dylan Garloch ("Garloch"), Eric Canter ("Canter"), and James E. Lewis ("Lewis"), motion to dismiss appellant's complaint in its entirety. Union, Fisher, Garloch, Canter, and Lewis are collectively referred to herein as "appellees."
{¶ 2} The facts from this case stem from an arbitration proceeding concerning all parties. The facts of the arbitration proceeding at issue are also set forth in this Court's opinion in Utility Workers Union of America Local 436-A v. Eastern Ohio Regional Wastewater Authority, 7th Dist., 2017-Ohio-7794, 97 N.E.3d 960. Appellant is an Ohio regional water and sewer district located in Bellaire, Ohio. Appellant is managed by four employees and has an additional nine employees (previously ten employees as explained below). The non-management employees are all represented by Union. Appellant and Union are both parties to a collective bargaining agreement ("CBA").
{¶ 3} On October 20, 2014, appellant performed mandatory drug testing on all of its employees. One of appellant's employees, Freddie Hocker ("Hocker"), tested positive for marijuana. Subsequently, Hocker's employment with appellant was terminated on December 3, 2014.
{¶ 4} Union, on behalf of Hocker, filed a grievance against appellant on the basis that appellant lacked just cause pursuant to the CBA to terminate Hocker. Union claimed that it never negotiated a drug and alcohol policy ("Policy") with appellant *204 which rendered Hocker's termination without just cause. Pursuant to the CBA, the matter eventually proceeded to arbitration in Belmont County, Ohio before the arbitrator Bruch McIntosh. Lewis, who is the senior national representative for Utility Workers Union of America, represented Union at the arbitration hearing.
{¶ 5} Pursuant to the CBA, the parties submitted one specific issue for Arbitrator McIntosh to decide. Appellant and appellees agree that the sole issue before the arbitrator was whether appellant had just cause to terminate Hocker and if not, what was the appropriate remedy. At the arbitration hearing, appellant argued that the Policy was in fact valid and negotiated. Appellant attempted to show that the Policy was valid and negotiated by: presenting testimony that drug testing had been done on its employees since 2003 with Union's knowledge, submitted Acknowledgements of Receipt of the Policy by various Union members, and addressing the fact that Union never filed a grievance regarding the Policy, procedure, testing, or the executed Acknowledgements of Receipt.
{¶ 6} Lewis, Canter, and Garloch all testified at the arbitration proceeding. Lewis, as Union's president, testified that he never agreed to the Policy and only first learned about the Policy when appellant conducted the drug testing which resulted in Hocker's termination. Canter and Garloch both testified that while they executed the Acknowledgements of Receipt, they did so because they were informed by appellant's management that failure to do so would result in termination. Additionally, Canter and Garloch both testified that they never received a copy of the Policy. Union also presented evidence that the April 1, 2014 CBA, the one that was in effect at the time of the hearing, was silent regarding the Policy.
{¶ 7} Arbitrator McIntosh eventually sustained the grievance in favor of Union and Hocker. Arbitrator McIntosh held that the Policy was never agreed to by Union which made appellant's termination of Hocker's employment without just cause. Arbitrator McIntosh did not hold that Hocker should be reinstated but did find that Hocker was owed all back pay and benefits from the date of his drug testing to the date of his "voluntary retirement."
{¶ 8} Equally relevant to this appeal as the arbitration proceeding is what happened after the arbitration proceeding. Appellant and appellees point to different and specific events following the arbitration hearing. Appellant states that after the arbitration hearing, its operations manager, Michael D. Dobbs, managed to locate the original executed Memorandum of Agreement between appellant and Union regarding the Policy. This particular Memorandum of Agreement was executed in 2003 and purports to have the signatures of appellant's then executive director, Fisher, and Union's then senior national representative, Donald P. Opatka. This Memorandum of Agreement contained the Policy and purportedly showed that Fisher and Opatka agreed to it.
{¶ 9} Appellant states that it provided a copy of the Memorandum of Agreement to appellees as part of a supplemental briefing to Arbitrator McIntosh's decision and allowed Fisher and Lewis to inspect the original. However, Union, Fisher, and Lewis continued to assert that it never executed the Memorandum of Agreement or negotiated the Policy.
{¶ 10} Appellees point out that Arbitrator McIntosh made his award in favor of Union and Hocker and that Arbitrator McIntosh retained jurisdiction over the matter in order to implement the award. However, after the Memorandum of Agreement was discovered, appellant argued *205 to Arbitrator McIntosh that he lacked jurisdiction to "implement," specifically to change or modify the award. Arbitrator McIntosh agreed and made no change to the award. Appellant also accused Fisher of fraud.
{¶ 11} Furthermore, appellees point out that Union brought an action in the Belmont County Court of Common Pleas in case number 16-CV-111 seeking an order modifying or vacating the arbitration award based on its ambiguity. However, appellant never filed a motion to vacate or modify the award based on Fisher's alleged fraud. Instead, appellant filed a motion in 16-CV-111 to confirm the arbitration award despite its allegations that Fisher and Union committed fraud. Appellees attached a copy of appellant's motion to confirm the award in case number 16-CV-111 to their brief. The trial court in 16-CV-111 denied Union's motion to modify or vacate the award, corrected the ambiguity in the award with regards to the amount of back pay Hocker was entitled to, and granted the remainder of appellant's motion.
{¶ 12} Appellant then brought this action seeking a declaratory judgment that the Policy was valid and alleging claims of fraud, tortious interference with a business relationship, tortious interference with a contract, and civil conspiracy against all appellees. The basis of this action was the statements that Fisher, Lewis, Canter, and Garloch made regarding either: not negotiating the Policy, not receiving the Policy, or denying the Policy's existence despite being shown the Memorandum of Agreement. Appellees filed a motion to dismiss alleging multiple grounds including: appellant's claims were barred by R.C. 2711, appellant's claims were barred under the doctrine of arbitral issue preclusion, appellant's claims were barred under the doctrine of witness immunity, appellant was bound by the doctrine of election of remedies, appellant did not show that it relied on any statements made by any of the appellees to its detriment regarding the fraud claim, and appellant's claims were preempted by the exclusive jurisdiction of SERB and the remedies contained in R.C. 4117.
{¶ 13} On January 6, 2017, the trial court granted appellees' motion to dismiss. The trial court adopted all of appellees' arguments and stated the following six reasons as to why appellant's complaint was dismissed:
1) This Court lacks subject matter jurisdiction over [Appellant's] claims because R.C. 2711 provides the exclusive statutory means for modifying or otherwise contesting an arbitrator's findings and award.
2) [Appellant's] claims are barred by the doctrine of arbitral issue preclusion.
3) [Appellant's] claims are barred by the doctrine of witness immunity.
4) [Appellant's] claims are barred by the election of remedies.
5) [Appellant's] claims must be dismissed because fraud may not be premised on reliance by third parties.
6) [Appellant's] claims are dependent on collective bargaining rights created under R.C. 4117, and this Court lacks jurisdiction to entertain them.
{¶ 14} Appellant timely filed this appeal on February 3, 2017. Appellant now raises seven assignments of error. However, as explained below, only appellant's first and fifth assignments of error will be addressed.
{¶ 15} Appellant's first assignment of error states:
THE TRIAL COURT ERRED IN DETERMINING IT LACKED SUBJECT
*206 MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS BASED UPON THE APPLICATION OF OHIO REVISED CODE CHAPTER 2711.
{¶ 16} Appellant argues that this action exceeds the scope of the parties' CBA and is therefore not subject to arbitration. Appellant argues that this action exceeds the scope because it is based on appellees' alleged continued denial of the existence of a valid and binding Policy.
{¶ 17} The trial court dismissed appellant's complaint, in part, pursuant to Civ.R. 12(B)(1) for lack of subject matter jurisdiction. Matters of subject matter jurisdiction are reviewed under a de novo standard. PC Surveillance.Net, LLC v. Rika Group, Corp. , 2012-Ohio-4569, 994 N.E.2d 843, ¶ 21.
{¶ 18} R.C. 2711.01(A) establishes the guidelines of arbitration when it is agreed to between parties. It states:
A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.
R.C. 2711.01(A).
{¶ 19} R.C. 2711.01(B) sets forth several exceptions to section (A) but none of them are relevant to the case at bar.
{¶ 20} In its complaint, appellant attached exhibit A. Exhibit A is a copy of the entire CBA between appellant and Union. Article 9 of the CBA is entitled "grievance-arbitration procedure." Article 9, Section 1 of the CBA states:
"During the life of this Agreement all disputes or disagreements between the [appellant] and the Union shall be adjusted and determined only by the procedures provided herein."
{¶ 21} The CBA was effective between April 1, 2014 and March 31, 2017 and was in effect when appellant filed this action on September 29, 2016. At no point did appellant attempt to challenge the validity of the arbitration clause in the CBA. This action involves a "dispute or disagreement" between appellant and Union, which makes appellant's action subject to Article 9 of the CBA.
{¶ 22} However, appellant argues that this dispute does not appear to arise out of the contract as the contract governs policies and procedures related to employees employed by appellant and represented by Union. Appellant argues that the continued denial of the existence of a valid policy is not explicitly governed by the CBA.
{¶ 23} This Court's decision in Villas Di Tuscany Condominium Assn., Inc. v. Villas Di Tuscany , 7th Dist. No 12 MA 165, 2014-Ohio-776, 2014 WL 860156 provides some guidance regarding this assignment of error. In Villas Di Tuscany , a condominium association brought a court action against the developer to enforce a promise to convey land for the benefit of the condominium association the developer allegedly made. The developer filed a motion to stay proceedings and refer the case to arbitration on the basis that the various sale agreements between the developer and the individual condominium unit owners included a clause requiring all claims to be submitted to arbitration. Id. at ¶ 4. The association opposed the developer's motion *207 arguing the action dealt with title and possession of real estate and not the individual units. Id. at ¶ 5. The trial court granted the developer's motion to stay the proceedings and submit the case to arbitration. Id. at ¶ 6.
{¶ 24} While the facts and legal reasoning of Villas Di Tuscany are slightly different because Villas Di Tuscany involved real property and not a CBA, it is not so different as to render Villas Di Tuscany distinguishable. The various purchase agreements in Villas Di Tuscany included a valid mediation/arbitration clause which stated:
"Any and all disputes, claims, questions, or disagreements arising from or relating in any way to this Agreement (each a "Claim") which cannot be settled through direct discussions between the parties, will be resolved by mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Rules. Any such Claim that cannot be resolved by mediation will be submitted to arbitration administered by the AAA in accordance with its Commercial Arbitration Rules. * * *"
Id. at ¶ 32.
{¶ 25} The condominium association raised numerous arguments as to why their action should not be submitted for arbitration including: the action involved real estate which was not covered under R.C. 2711, the unit owners were not a party to the action and therefore could not be compelled to arbitrate, the arbitration provision failed to comply with R.C. 2711.01(A), appellant was the proper party to bring the action for damages pertaining to common elements and was not required to arbitrate, the motion to submit to arbitration violated Chapter 5311 of the Ohio Revised Code, and the condominium association's claims against one party were proper because said party was not a signatory on any of the agreements. However, this Court ultimately affirmed the trial court's decision to stay the proceedings and refer the case for arbitration. Id. at ¶ 58.
{¶ 26} Furthermore, Ohio courts will dismiss common law intentional tort claims for lack of subject matter jurisdiction when the allegations underlying the claim are governed by a collective bargaining agreement. See Marzano v. Struthers City School District Board of Education , 7th Dist., 2017-Ohio-7768, 97 N.E.3d 1116 citing Gudin v. Western Reserve Hospital , 10th Dist. No. 00AP-912, 2001 WL 664389 (Held that summary judgment in favor of employer against employee on employee's common law claim of intentional infliction of emotional distress was proper due to the existence of a collective bargaining agreement with a specified grievance procedure). Ultimately, due to the existence of a valid arbitration clause between appellant and Union in the CBA, the trial court did not have subject matter jurisdiction over appellant's action and granting appellees' motion to dismiss for lack of subject matter jurisdiction was proper.
{¶ 27} Accordingly, appellant's first assignment of error lacks merit and is overruled.
{¶ 28} Appellant's fifth assignment of error states:
THE TRIAL COURT ERRED IN DETERMINING IT LACKED JURISDICTION OVER PLAINTIFF'S CLAIMS PURSUANT TO OHIO REVISED CODE CHAPTER 4117.
{¶ 29} Appellant argues that actions between an employer and a union are not governed by R.C. 4117 when a party asserts rights that are independent of R.C. 4117. Appellant argues that its action is independent of R.C. 4117 and therefore *208 proper to bring in a court of common pleas.
{¶ 30} As this assignment of error is based on the trial court's dismissal of appellant's complaint due to lack of subject matter jurisdiction, it is subject to the same de novo standard of review previously set forth addressing appellant's first assignment of error.
{¶ 31} R.C. 4117 governs public employees' collective bargaining rights.
{¶ 32} Appellant and appellees cite numerous cases from the Ohio Supreme Court in support of their respective arguments. Appellant first cites State ex rel. Rootstown School Dist. Bd. of Educ. v. Portage County Court of Common Pleas , 78 Ohio St.3d 489, 678 N.E.2d 1365 (1997). In Rootstown , the Ohio Supreme Court held that if a party asserts rights that are independent of R.C. 4117, the party's complaint may be heard in common pleas court. Id. at 493, 678 N.E.2d 1365. However, the claims cannot arise from or depend on R.C. 4117 collective bargaining rights. See Id. at 494, 678 N.E.2d 1365 ("The intervening respondents * * * contract claims do not necessarily arise from or depend on R.C. Chapter 4117 collective bargaining rights.").
{¶ 33} However, Rootstown appears distinguishable from the case at bar. The Court ruled that two issues ultimately made the case in Rootstown appropriate for a common pleas court rather than the State Employment Relations Board ("SERB"). First, an intervening respondent in Rootstown filed a claim alleging violations of the nonteaching employees' contract pursuant to R.C. 3319.081 which, the Court ruled, did "not necessarily arise from or depend on R.C. Chapter 4117 collective bargaining rights." Id. at 493-494, 678 N.E.2d 1365. Second, there were also claims of violations of the Ohio Constitution which the Court held SERB does not have jurisdiction over. Id. at 494, 678 N.E.2d 1365.
{¶ 34} Appellees cite the Ohio Supreme Court's decision in State ex rel. Cleveland v. Sutula , 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88. In Sutula , the Ohio Supreme Court reversed the Eighth District's decision to allow a Court of Common Pleas to hear a labor dispute between the City of Cleveland and its employees' union. In doing so, the Ohio Supreme Court held:
"First, as previously noted, the dispositive test is whether the claims 'arise from or depend on the collective bargaining rights created by R.C. Chapter 4117. [Citations omitted]. Therefore, 'SERB has exclusive jurisdiction over matters within R.C. Chapter 4117 in its entirety, not simply over unfair labor practices claim.' [Citations omitted]."
Id. at ¶ 20.
{¶ 35} The Ohio Supreme Court continued, ruling that the union's complaint was also governed by SERB because it alleged unfair labor practices pursuant to R.C. 4117.17(A)(1) and (A)(5). Id. at ¶ 21. However, this is distinguishable from the case at bar as there is no claim for unfair labor practices.
{¶ 36} Appellees further contend that the facts in Sutula are similar enough to the case at bar for that decision to apply here. In Sutula , Cleveland and a union were unable to come to a mutual agreement regarding a CBA. SERB appointed a mediator and a fact-finder to settle disputes but the union rejected any agreement and filed a 10 day notice to strike. Id. at ¶ 3-4. Cleveland issued a proposed agreement prior to the strike which the union rejected and the union commenced with its strike. Id. at ¶ 4. The union submitted a counteroffer after the strike commenced which Cleveland rejected. Id. The union then allegedly submitted a second *209 counteroffer but before Cleveland could respond, the union announced it accepted Cleveland's prestrike offer. Id. at ¶ 5. However, Cleveland told the union that the offer no longer existed and could not be accepted. Id.
{¶ 37} The union then filed an action in the Cuyahoga County Court of Common Pleas against Cleveland. Cleveland moved to dismiss pursuant to Civ.R. 12(B)(6) claiming SERB had exclusive jurisdiction over the dispute but the trial court denied Cleveland's motion. Id. at ¶ 9.
{¶ 38} Cleveland then filed a complaint in the Cuyahoga County Court of Appeals seeking a writ of prohibition against the trial judge from proceeding with the union's case. Id. at ¶ 10. The trial judge filed a motion to dismiss for failure to state a claim which the Court of Appeals granted. Id. As described above, the Ohio Supreme Court reversed the Eighth District's decision holding that SERB had exclusive jurisdiction over this matter. Id. at ¶ 20.
{¶ 39} The central issue becomes whether appellant's claims that appellees' continued denial of the Policy arises from or depends on the collective bargaining rights. It is worth stating that Arbitrator McIntosh found that the CBA contained no expressed drug and alcohol policy and only contained a letter of understanding that members of appellant and union would come to a mutually acceptable policy which was not done. (Complaint, Exhibit J). Ultimately, it does appear that appellant's claims arise from or are dependent on collective bargaining rights.
{¶ 40} While the CBA between appellant and union does not cover fraud, tortious interference, or civil conspiracy claims between the parties, the CBA at the very least contemplates the existence of the Policy. Whether the Policy existed and whether it was unilaterally or bilaterally implemented is essential to all of appellant's claims. Simplified, appellant's claims are that appellant and Union negotiated the Policy as per the CBA and Union subsequently denied the Policy's existence. The Policy itself arises from or is dependent on collective bargaining rights. Without those collective bargaining rights, the validity of the Policy is a moot issue. Ultimately, because the Policy arises from or is dependent on collective bargaining rights and the Policy is the very basis of all of appellant's claims, it appears that SERB has exclusive jurisdiction over appellant's claims.
{¶ 41} Accordingly, appellant's fifth assignment of error appears to lack merit and should be overruled.
{¶ 42} Appellant's second, third, fourth and sixth assignments of error are moot.
{¶ 43} For the reasons stated above, the trial court's decision to dismiss this action pursuant to Civ.R. 12(B)(1) for lack of subject matter jurisdiction due to the existence of a valid arbitration agreement and due to R.C. 4117 is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.